[No. A104888. First Dist., Div. Five. Sept. 10, 2004.]

RAYMOND CONNESS, Plaintiff and Respondent, v.
USHA SATRAM, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, part A. of the Discussion is not certified for publication.

COUNSEL

Cooperative Restraining Order Clinic, Tara M. Berta and Emberly C. Cross for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

OPINION

SIMONS, J.— ■ Pursuant to the Domestic Violence Prevention Act (DVPA) (Fam. Code,[1] § 6200 et seq.), a court may issue a protective order to restrain any person for the purpose of preventing a recurrence of domestic violence and ensuring a period of separation of the persons involved. (§§ 6220, 6300.) California law regulates the issuance of *mutual* restraining orders under the DVPA by subjecting them to additional procedural requirements. (§ 6305.) In this case, Usha Satram (appellant) appeals a restraining order issued against her on behalf of Raymond Conness (respondent). Among her grounds is one that raises an issue of first impression: ■ When two antagonistic parties separately apply for and receive restraining orders under the DVPA on different dates, is the second application a request for a *mutual* order, subject to the requirements of section 6305? In the published part of our opinion, we conclude it is not and affirm.[2]

BACKGROUND[3]

On September 16, 2003, respondent was granted a domestic violence temporary restraining order (TRO) against appellant, with whom he had previously had a dating relationship. Respondent's application for his restraining order noted the existence of a current domestic violence/protective order, issued in the City and County of San Francisco, but that order was not otherwise described or attached to the application. The application, provided under penalty of perjury, recited a history of harassing phone calls from appellant to respondent, his wife and his family and friends. According to respondent, while he was incarcerated in 2003, appellant sent him letters in which she bragged about intimate details of her relationship with her new

---

[1] All undesignated section references are to the Family Code.

[2] In the unpublished portion of the opinion, we reject appellant's contention that the trial court misapplied the law in finding sufficient grounds for issuing an order.

[3] No respondent's brief has been filed. California Rules of Court, rule 17(a) provides that in such circumstances, "the court will decide the appeal on the record, the opening brief, and any oral argument by appellant." We examine the record on the basis of appellant's brief and reverse only if prejudicial error is found. (*Lee v. Wells Fargo Bank* (2001) 88 Cal.App.4th 1187, 1192, fn. 7 [106 Cal.Rptr.2d 726].)

husband. Further, on June 2, prior to respondent's release from custody, appellant called respondent's wife to say she had reported respondent to the police for stealing her ATM (automated teller machine) card. Respondent was released from prison on July 1, 2003. On July 3 and August 3, according to respondent, appellant called his parole officer to falsely report that he had knocked on her door. According to respondent, appellant was an alcoholic, had mental problems and was "lying to try and make [him] lose [his] freedom."

On September 29, 2003, appellant filed her answer. It stated that on September 10, 2003 (eight days before being served with respondent's restraining order application), following a hearing at which respondent was present, she was issued a three-year restraining order against him. Appellant stated that she had called respondent's parole officer in July 2003 because respondent was calling her in violation of his parole. She denied the other allegations against her in respondent's application. Appellant's answer detailed severe acts of violence committed against her by respondent throughout their seven-year relationship. She stated that respondent was imprisoned three times for violent acts against her and had also threatened and attacked her family members. Appellant asserted that respondent was trying to obtain a restraining order to keep her from protecting herself against him.

At the hearing on October 1, 2003, respondent conceded that he previously had been incarcerated due to incidents of domestic violence against appellant. Respondent argued that he just wanted appellant to "stay away" and that granting him a restraining order against her would not nullify the restraining order she had obtained against him. After hearing from both parties and considering five letters appellant sent to respondent at prison between November 2002 and January 2003,[4] the court issued the order sought.

DISCUSSION

■ Under the DVPA, "domestic violence" is defined, in relevant part, as abuse perpetrated against "[a] person with whom the respondent is having or has had a dating . . . relationship." (§ 6211, subd. (c).) "Abuse" is defined as intentionally or recklessly causing or attempting to cause bodily injury, or sexual assault, or placing a person in reasonable apprehension of imminent serious bodily injury to that person or to another, or engaging in any behavior that has been or could be enjoined pursuant to section 6320. (§ 6203.) The behavior outlined in section 6320 includes "stalking, threatening, . . . harassing, telephoning, . . . contacting, either directly or indirectly, by mail or

---

[4] The content of the letters was not disclosed at the hearing, nor are the letters included in the appellate record.

otherwise, coming within a specified distance of, or disturbing the peace of the other party . . . ." (§ 6320.) Thus, the requisite abuse need not be actual infliction of physical injury or assault. (Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2004) ¶ 5:67, p. 5-24.)

A. *Restrainable Abuse**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

B. *Mutual Restraining Orders*

█ Section 6305 provides: "The court may not issue *a mutual order* enjoining the parties from specific acts of abuse described in Section 6320 (a) unless both parties personally appear and each party presents written evidence of abuse or domestic violence and (b) the court makes detailed findings of fact indicating that both parties acted primarily as aggressors and that neither party acted primarily in self-defense." (Italics added.) Appellant contends we should interpret the term "a mutual order" broadly to apply whenever restraining orders have been issued against both parties even if the orders did not result from a joint hearing and were not issued simultaneously in a single document. In evaluating this proposed interpretation, our goal is to determine the Legislature's intent so as to best implement the statutory purpose. First, we examine the statutory language, giving the words their usual and ordinary meaning. (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272 [105 Cal.Rptr.2d 457, 19 P.3d 1196].) To resolve any ambiguity in that language we " 'select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' [Citation.]" (*People v. Coronado* (1995) 12 Cal.4th 145, 151 [48 Cal.Rptr.2d 77, 906 P.2d 1232].) The application of this familiar standard leads us to conclude the statute should be construed more narrowly than appellant argues.

█ The plain language of the statute delineating certain procedural requisites for "a mutual order" seems to imply a single order that imposes parallel requirements on each party, not multiple orders. Even if it were possible to treat the second order as "a mutual order" because it imposed corresponding obligations, other statutory provisions undermine this interpretation. The statutory requirement that "both parties personally appear" makes sense only in the context of a single hearing. If both "*A*" and "*B*" seek restraining orders against each other and *A* does not appear at the joint hearing, only *A* will suffer from the failure to be present. If the evidence is

---

*See footnote, *ante*, page 197.

sufficient, *B* will receive the order sought and *A* will not. Under appellant's proposed interpretation, however, if *A* obtained the first order, *A* could then thwart *B*'s effort to obtain a second, "mutual," order by the simple expedient of failing to appear. *A* would, effectively, have a veto power over *B*'s petition. The Legislature could not have intended such a result.[7]

Further, the adoption of appellant's proposed interpretation of "mutual order" would create a difficult retroactivity question that the Legislature, and not this court, should address. If *A* sought a restraining order against *B* and *B* failed to appear, the court could legally issue the order, if a sufficient showing were made, and that order may issue without providing a set of detailed factual findings in support. If *B* then sought such an order against *A*, appellant argues that this second order is subject to the procedural requirements of section 6305. Appellant fails to address whether characterizing the second order as "mutual" should be applied retroactively to the order *A* received. If not, the winner of the race to the courthouse receives the benefits of his or her share of the "mutual" order without complying with the requirements designed to ensure that the mutuality is appropriate. On the other hand, applying section 6305 retroactively would lead, presumably, to vacating a validly issued order for the failure to provide procedural protections inapplicable at the time of the hearing. A trial court's ability to unravel this procedural snarl would be limited, particularly in those situations where the original order was issued by the superior court in a county different than the one with jurisdiction over the second order.[8]

Appellant presents compelling reasons for broadly interpreting the statute, and we do not mean to suggest that the Legislature is unable to draft a statute that broadly interprets the term "mutual order" and effectively resolves each of the concerns raised herein. But, it has not yet done so, and "[w]e will not, and cannot, do what the Legislature could have, but did not do." (*People v. Castille* (2003) 108 Cal.App.4th 469, 490 [133 Cal.Rptr.2d 489].)

Appellant relies on *Sommi v. Ayer* (2001) 51 Mass.App.Ct. 207 [744 N.E.2d 679] to support her contention that the restraining order against her constituted a mutual restraining order. In *Sommi*, the defendant obtained ex parte restraining orders against the plaintiffs on December 26, 1998, based on allegations of plaintiffs' physical and emotional abuse. Three days later, the

---

[7] Appellant fails to address the effect of her argument on the duration of the "mutual" order. Nonsimultaneous orders will almost always be issued on separate dates. Since the first cannot extend beyond three years from its date of issue (§ 6345), must the second have a shorter term? Or, can the "mutual" orders have different expiration dates?

[8] In this case the record on appeal does not contain a copy of the original restraining order obtained by appellant or the record of that proceeding. Therefore, we are unable to determine definitively what court issued the order or the grounds that supported it.

plaintiffs sought ex parte restraining orders against the defendant in a different Massachusetts district court. On January 7, 1999, the first court extended the restraining orders against the plaintiff for one year. The next day, the parties appeared before the second court, which found there was " 'abuse amongst all of the parties,' " stated there would be mutual restraining orders, but failed to make the written factual finding required by statute.[9] (*Id.* at p. 208 [at p. 680].) The appellate court held that because the restraining orders were mutual, the second court was required to make specific written findings of fact, whose purpose is to "ensure that the judge will carefully consider the evidence presented to determine who is the real victim and aggressor in an abusive relationship and if a mutual order is warranted." (*Id.* at pp. 210–211 [at p. 682].)

We do not find *Sommi* persuasive, in part because of differences between the Massachusetts and California statutes. The Massachusetts statute, for example, does not require that the parties be personally present, removing the basis for one of the significant arguments against appellant's interpretation of section 6305. In addition, the Massachusetts opinion never addressed, much less resolved, the retroactivity and jurisdictional problems discussed, *ante.*

■ We agree with *Sommi* that written findings are necessary to ensure that mutual restraints are imposed only after a careful consideration of the evidence by the court. We note that when enacted in 1993, section 6305 provided: "The court may not issue a mutual [restraining] order . . . unless both parties personally appear and each party presents written evidence of abuse or domestic violence. In this case, written evidence is not required if both parties agree that this requirement does not apply." (Stats. 1993, ch. 219, § 154, p. 1660.) ■ The 1995 amendment eliminated the waiver provision and added a requirement that the court make detailed factual findings supporting the conclusion that both parties acted primarily as aggressors and neither acted primarily in self-defense. (Stats. 1995, ch. 246, § 2, p. 852.) This amendment helps ensure that a mutual order is the product of the careful evaluation of a thorough record and not simply the result of the moving party yielding to the other party's importunities or the court deciding that a mutual order is an expedient response to joint claims of abuse.[10] These problems,

---

[9] The Massachusetts statute states, in pertinent part: "A court may issue a mutual restraining order or mutual no-contact order pursuant to any abuse prevention action only if the court has made specific written findings of fact. The court shall then provide a detailed order, sufficiently specific to apprise any law officer as to which party has violated the order, if the parties are in or appear to be in violation of the order." (Ann. Laws of Mass., ch. 209A, § 3.)

[10] Concurrent with this 1995 amendment, chapter 246, section 4, also amended Penal Code section 13701, by adding subdivision (b) that, among other things, "requires peace officers to make reasonable efforts to identify and arrest only the primary [now referred to as 'dominant'] aggressor, thus limiting dual arrests." (*Review of Selected 1995 Legislation* (1995–1996) 27 Pacific L.J. 349, 793, fns. omitted.)

addressed by the 1995 amendment, would seem to be reduced substantially when the restraints are imposed in separate hearings. Certainly nothing in our record suggests that either appellant or the court simply found it more convenient to agree to mutual restraints than to insist on a just result.

■ Here, the trial court was aware that appellant had obtained a prior domestic violence restraining order against respondent. It is essential in a case such as this that the court rigorously evaluate the evidence to ensure that the moving party has, in fact, been victimized. This is so, particularly, where, as here, the trial court is aware that the acts *committed* by the moving party (respondent here) are significantly more violent than the acts *alleged* by the moving party. The record reflects that the trial court in this case exercised sufficient care. It expressly made credibility findings that supported its conclusion that appellant had engaged in restrainable abuse in incidents that were separate and distinct from the crimes committed against her. We affirm that decision.

DISPOSITION

The order is affirmed.

Jones, P. J., and Stevens, J., concurred.