Filed 9/20/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| MELISSA G., | B284031 |
| Respondent, | (Los Angeles County Super. Ct. No. BF044497) |
| v. | |
| RAYMOND M., | |
| Appellant. | |

Appeal from an order of the Superior Court of Los Angeles County, Richard J. Burdge, Jr., Judge. Reversed and remanded.

Covington & Burling, Kathryn E. Cahoy, Helen Hwang; Family Violence Appellate Project, Shuray Ghorishi, Erin C. Smith, Nancy K.D. Lemon, Cory D. Hernandez, for Appellant.

No appearance for Respondent.

_____

Appellant Raymond M. (father) appeals from two domestic violence restraining orders granted under the Domestic Violence Prevention Act (DVPA) (Fam. Code, § 6200 et seq.)[1]  Following a single evidentiary hearing on separate requests filed by father and respondent Melissa G. (mother), the court granted both requests.  Father contends reversal is required because section 6305 requires a court to make detailed factual findings before issuing mutual restraining orders, and the court did not make the requisite factual findings.  Father further contends there is insufficient evidence to support a factual finding that he was the primary aggressor and not acting in self-defense, and he seeks an unqualified reversal of the order restraining him from contacting mother, rather than a reversal that remands the case for factual findings.  Mother did not file a respondent's brief.[2]

We agree with father that the court erred by not making the factual findings required under section 6305.  We disagree, however, with father's insufficient evidence argument, and so we reverse and remand.

_____

[1] Statutory references are to the Family Code unless otherwise indicated.

[2] When a respondent fails to file a brief, "the court may decide the appeal on the record, the opening brief, and any oral argument by the appellant."  (Cal. Rules of Court, rule 8.220(a)(2).)

# FACTUAL AND PROCEDURAL BACKGROUND

## *Summary of relevant facts*

In the filings before the trial court, it was undisputed that mother had primary physical custody of C.G. (the son), who was born in 2010. Father previously obtained a three-year restraining order against mother in 2010, which he did not seek to renew when it expired in 2013. On January 18, 2017, the court ordered weekly Saturday visits for father. The visits served as a flashpoint for flaring tensions between mother and father. Because each party offered statements supporting different versions of events, we review key dates and summarize the main points raised in statements presented to the trial court.

1. <u>January 21, 2017</u>

According to father, when mother brought the son for the first visit following the court's January 18, 2017 order, the son's pants and shirt were sewn together in such a way that he could not use the bathroom. When father separated the clothing, a tape recorder fell out, and father noticed small cuts in the son's skin around his waist in approximately the same area the clothes had been sewn together. When father returned the son to mother at the end of the visit, mother accused father of stealing the tape recorder and hit father with her fist multiple times, leaving

marks on his cheek and near his eye. Father claimed mother also threw cake in his face and on his car. Father attached a photo depicting his injuries. He stated he was attaching a police report filed after the incident, but the exhibit does not appear in our record.

Mother's statements attached to her restraining order request refer to a number of documents, but the referenced documents do not appear in our record. Mother claimed she had photos proving that the son's shirt was not sewn into his pants, and that she filed a police report for theft at 7:40 p.m. on January 21, 2017. She claimed father's report was for 8:00 p.m. on the same date, but then asked rhetorically "why is [father's] report dated for the day after?" In the same paragraph, making an apparent reference to father's claim that mother attacked him, mother stated, "And he has these magical new bruises. I have video evidence of him assaulting me in front of my son, the people in the video clear as day say he was the one doing the assaulting, including an employee of the station." Father denied assaulting mother.

2. February 4, 2017[3]

On February 4, 2017, mother's friend brought the son

---

[3] Visits did not take place on January 28, 2017, or February 18, 2017. The parties dispute the reasons why the visits did not occur, but the details are not relevant to the current appeal. There was also a dispute about how father

to the custody exchange and was videotaping events on her phone. According to father, mother's friend pushed her phone close to his face and called him a racial epithet. He tried to leave with the son, but saw mother and a man waiting outside, so he returned to the station, where mother's friend spit on him, and he knocked the phone out of her hand. Mother's declaration denied father's version of the events and referenced portions of a video submitted at an earlier proceeding, but it is not in our record on appeal.

3. <u>March 4, 2017</u>

On March 4, 2017, mother was not at the police station where the exchange was supposed to take place, so father went to mother's home, where he claims she physically assaulted him. According to father, mother was not home when he arrived with police. After the police left, he saw mother and the son with a group of people, but when he approached them, mother told the son to run to his grandmother's home. Mother then grabbed father's arm, bit him, and began to punch and scratch his face, leaving teeth marks and other visible marks that were documented by police photographs. Father filed a police report on the same day. The report indicates it was prepared on March 4, 2017

returned the son to mother at the end of a visit on February 25, 2017, but the details are not relevant to the current appeal. In addition, no visits have taken place after February 25, 2017.

5

at 7:50 p.m., concerning an incident that occurred on the same day at 2:30 p.m. Father also attached a printout from a messaging program called "Talking Parents," showing a message on March 10, 2017 around 7:00 p.m. from mother to father stating "did it hurt when you bit yourself?"

Mother presented a very different version of the events of March 4, 2017. According to mother, she notified father through Talking Parents that she was canceling the son's visit because of concerns with father's behavior. She was at home when father and a female police officer arrived at around 1:10 p.m. She called 911 and spoke with a sergeant, who later arrived at the home and gave mother a business card. Mother attached the sergeant's business card, which stated "child custody dispute; questions regarding R/O; advised on premises." The card also gave a time and date of March 4, 2017 at 2:30 p.m. Mother noted that father was claiming she attacked him at the same time the business card shows the sergeant was present. She denied biting or attacking father, stating the bite mark appeared self-inflicted and that she "would never do something so disgusting, especially to someone who has Hepatitis, despite his attempts to slander my name." Mother claimed father "has a long history of claiming someone is hurting him after he has already done the assaulting on someone else."

### 4. Blocked calls to mother's phone

According to mother, on the evening of March 13, 2017,

she received over 350 missed calls from a blocked number, including a large number of voicemails from either father or a woman using a voice changer. She claimed that by April 10, 2017, she had received over 2,000 blocked calls. Father denied contacting mother by any means other than Talking Parents, and denied instructing anyone else to call, text, or e-mail mother on his behalf.

### *Requests for restraining orders*

On March 8, 2017, father filed a request for a domestic violence restraining order against mother, and asked the court to award him sole legal and physical custody of the son. Father attached a declaration offered in lieu of personal testimony. Father also filed an additional declaration in response to a request for order filed by mother. Mother's request for order is not part of the record on appeal, but according to father's declaration, mother filed a request asking for father's visits with the son to be supervised.

On May 4, 2017, mother filed her own request for a restraining order against father and a request to curtail father's visits. Attached to mother's requests were 12 pages of additional details and several exhibits. Father filed a response to mother's restraining order request on May 23, 2017.

*Hearing*

The trial court considered both parties' requests for restraining orders at the same hearing on May 23, 2017. The judge was familiar with the parties and its earlier January 2017 order granting father visitation. Mother represented herself, and father appeared with counsel.

The court proceeded largely based upon the declarations of the parties, after the parties swore to their truth, and took only minimal additional testimony from mother. Mother testified that she could identify father's voice along with that of an unknown woman on some of the allegedly harassing voicemail messages mother received. The court and the parties discussed the evidence and their views about the challenges and conflicts in custody exchanges. Mother acknowledged she did not have witnesses to support her version of events, but referencing the March 4, 2017 events, she argued "There's police present at the house from start to finish, and even if a restraining order is granted, I wanted to, at least, be semi both ways." Father's counsel argued there was no evidence to support a mutual restraining order, stating "the court has to find that both parties acted as primary aggressors and neither party has acted primarily in self defense." Father's counsel argued mother's version of events was not credible, while father had credible evidence to support his request. The court responded there was undisputed evidence that father knocked the phone out of mother's friend's hand while the

child was present, which would support a restraining order. The court indicated that because there were independent acts of domestic violence, it did not have to analyze which party was a primary aggressor. The court also acknowledged that for the incidents where father had bite and scratch marks, the evidence suggested father may not even have been an aggressor at all.

Ultimately, the court announced it would issue two restraining orders "to restrain each party from harassing or following or stalking, or any of those things to the other party, and I'm going to issue a restraining order against communicating with the other party, except on Talking Parents." As the court explained, "in other words, I'm just going to order these two people to leave each other alone." The court did not make any findings of fact regarding whether mother or father acted as a primary aggressor or was acting primarily in self-defense.

Father's counsel also argued that father should be awarded primary physical custody because mother was not acting in the child's best interests. The court declined to shift primary physical custody, reasoning that the child had only recently started visits with father. The remainder of the hearing focused on logistical details of implementing the legal and physical custody orders. Following the hearing, the court issued a minute order together with two separate orders on mandatory Judicial Council Form DV-130,

9

Restraining Order After Hearing (Order of Protection).[4]

## DISCUSSION

Father contends the trial court erred when it determined factual findings were not required under section 6305 where the restraining order requests involved separate incidents. No published case has yet examined whether, following a single hearing, a court may enter two restraining orders that grant two separate applications to restrain opposing parties without first making the factual findings

---

[4] Section 6221, subdivision (c) states: "Any order issued by a court to which this division applies shall be issued on forms adopted by the Judicial Council of California." Mandatory Judicial Council Form DV-130, entitled "Restraining Order After Hearing (Order of Protection)," does not provide an option to fill out the restrictions applying to both parties in a single form for a mutual restraining order. (See Judicial Council Forms, form DV-130, available at http://www.courts.ca.gov/documents/dv130.pdf [as of Feb. 15, 2018].) Because the DV-130 form is merely a mechanism to effectuate the trial court's order at the hearing that restrained both parties, the fact that the orders are issued on separate forms does not affect our analysis of whether the requirements of section 6305 apply. (See *J. H. McKnight Ranch, Inc. v. Franchise Tax Bd.* (2003) 110 Cal.App.4th 978, 988 [declining to adopt statutory interpretation that would "elevate form over function" in contravention of legislative purpose].)

required under section 6305. Considering the language of section 6305, its legislative history, and existing case law, we agree with father that such findings are required regardless of whether the two restraining order requests stem from a single incident or separate incidents. We reject father's additional contention that there is no substantial evidence to support a finding that he acted primarily as an aggressor. Because the question of whether both parties acted primarily as aggressors and neither acted primarily in self-defense is best answered in the first instance by the trial court, we remand for factual findings.

### *Standard of review*

The question posed by father's appeal is a matter of statutory construction, and we apply a de novo standard of review. (*Isidora M. v. Silvino M.* (2015) 239 Cal.App.4th 11, 16 (*Isidora M.*).)

### *Law governing restraining orders*

Under the DVPA, a court may issue a restraining order to prevent domestic violence or abuse if the party seeking the order "shows, to the satisfaction of the court, reasonable proof of a past act or acts of abuse." (§§ 6300, 6220.) "Abuse" includes intentionally or recklessly causing or attempting to cause bodily injury to, attacking, striking, stalking, threatening, harassing, making annoying telephone calls to,

11

or disturbing the peace of the other party. (§§ 6203, 6320.)

"California law regulates the issuance of *mutual* restraining orders under the DVPA by subjecting them to additional procedural requirements. (§ 6305.)" (*Conness v. Satram* (2004) 122 Cal.App.4th 197, 200 (*Conness*).) A court may not enter "a mutual order" restraining the parties from further acts of abuse unless "(1) [b]oth parties personally appear and each party presents written evidence of abuse or domestic violence" using a mandatory Judicial Council form, and "(2) [t]he court makes detailed findings of fact indicating that both parties acted as a primary aggressor and that neither party acted primarily in self-defense." (§ 6305, subd. (a)(2).)[5] If the court enters a mutual order without making

_____

[5] The full text of section 6305 reads: "(a) The court shall not issue a mutual order enjoining the parties from specific acts of abuse described in Section 6320 unless both of the following apply: [¶] (1) Both parties personally appear and each party presents written evidence of abuse or domestic violence in an application for relief using a mandatory Judicial Council restraining order application form. For purposes of this paragraph, written evidence of abuse or domestic violence in a responsive pleading does not satisfy the party's obligation to present written evidence of abuse or domestic violence. By July 1, 2016, the Judicial Council shall modify forms as necessary to provide notice of this information. [¶] (2) The court makes detailed findings of fact indicating that both parties acted as a primary aggressor and that neither party acted primarily in self-defense. [¶] (b) For purposes of subdivision (a), in determining if both parties acted primarily as aggressors,

the required factual findings, it acts in excess of its jurisdiction and the order is voidable. (*Monterroso v. Moran* (2006) 135 Cal.App.4th 732, 737–739 (*Monterroso*).) As used in section 6305, the phrase "mutual order" may refer to a single order restraining two opposing parties from engaging in the acts of abuse described in section 6320 or two separate orders which together accomplish the same result as a single order. (§ 6305; but see *Conness, supra*, at pp. 202–204 [two orders entered proximately in time but following separate hearings on different days do not fall under the definition of a mutual order].)

In determining whether both parties acted primarily as aggressors, the court must consider the provisions set forth in Penal Code section 836, subdivision (c)(3), "concerning dominant aggressors." (§ 6305, subd. (b).) Penal Code section 836, subdivision (c) governs the conduct of peace officers in connection with making arrests in response to calls alleging violations of already issued restraining orders. Subdivision (c)(3) addresses situations where the peace officer encounters persons who are subject to previously issued mutual restraining orders, directing that the officer "make reasonable efforts to identify, and may arrest, the dominant aggressor involved in the incident." (Pen. Code,

---

the court shall consider the provisions concerning dominant aggressors set forth in paragraph (3) of subdivision (c) of Section 836 of the Penal Code."

§ 836, subd. (c)(3).)[6]  A "dominant aggressor" is defined as "the person determined to be the most significant, rather than the first, aggressor," and Penal Code section 836, subdivision (c)(3) requires the officer to consider a number of factors in identifying the dominant aggressor, including "(A) the intent of the law to protect victims of domestic violence from continuing abuse, (B) the threats creating fear of physical injury, (C) the history of domestic violence between the persons involved, and (D) whether either person involved acted in self-defense."

The legislative history of section 6305, its relationship to the Violence Against Women Act of 1994 (VAWA) (42

---

[6] Penal Code section 836, subdivision (c)(3) states:  "In situations where mutual protective orders have been issued . . . liability for arrest under this subdivision applies only to those persons who are reasonably believed to have been the dominant aggressor.  In those situations, prior to making an arrest under this subdivision, the peace officer shall make reasonable efforts to identify, and may arrest, the dominant aggressor involved in the incident.  The dominant aggressor is the person determined to be the most significant, rather than the first, aggressor.  In identifying the dominant aggressor, an officer shall consider (A) the intent of the law to protect victims of domestic violence from continuing abuse, (B) the threats creating fear of physical injury, (C) the history of domestic violence between the persons involved, and (D) whether either person involved acted in self-defense."

U.S.C. § 13981 et seq.),[7] and the purpose of its factual finding requirement were discussed at length in *Isidora M., supra,* 239 Cal.App.4th at pages 19–21. "As originally enacted in 1993, former section 6305 provided: 'The court may not issue a mutual order enjoining the parties from specific acts of abuse described in Section 6320 unless both parties personally appear and each party presents written evidence of abuse or domestic violence. In this case, written evidence is not required if both parties agree that this requirement does not apply.' (Stats. 1993, ch. 219, § 154, p. 1654.)" (*Id.* at p. 19.) In 1995, the statute was amended to remove the waiver provision and to limit mutual restraining orders to situations where a court found that both parties had acted as primary aggressors and neither party had acted primarily in self-defense. (*Id.* at p. 20.) The California legislature enacted changes to bring California law on domestic violence restraining orders into conformity with federal requirements for grants and federal funding. (*Id.* at pp. 19–20.) The *Conness* court explained that the 1995 amendment "help[ed] ensure that a mutual order is the

---

[7] VAWA was part of the larger Violent Crime Control and Law Enforcement Act of 1994 (Pub.L. No. 103–322 (Sept. 13, 1994) 108 Stat. 1796) and was previously codified at 42 U.S.C. section 13981 et seq. After the U.S. Supreme Court held Congress lacked constitutional authority to enact certain portions of VAWA (*United States v. Morrison* (2000) 529 U.S. 598), Congress reauthorized, updated, and recodified certain provisions. (See Pub.L. No. 113–4 (Mar. 7, 2013) 127 Stat. 56.)

product of the careful evaluation of a thorough record and not simply the result of the moving party yielding to the other party's importunities or the court deciding that a mutual order is an expedient response to joint claims of abuse." (*Conness, supra,* 122 Cal.App.4th at p. 204.) The changes also ensured that mutual restraining orders issued in California would be entitled to full faith and credit in other states. (18 U.S.C. § 2265(c); Sen. Com. on Crim. Proc., Analysis of Sen. Bill No. 591 (1995-1996 Reg. Sess.) Apr. 4, 1995.)

In 2015, the Legislature added subdivision (b) directing courts to consider the provisions of Penal Code section 836, subdivision (c)(3), concerning dominant aggressors in determining if both parties acted as primary aggressors. (*Isidora M., supra,* 239 Cal.App.4th at p. 17, fn. 7.) In 2016, the Legislature clarified that written evidence of abuse must be submitted on an application for a restraining order, and cannot be submitted solely as part of a responsive pleading. (§ 6305, as amended by Stats. 2015, ch. 73, § 1; Sen. Jud. Com., Analysis of Assem. Bill No. 536. (2015-2016 Reg. Sess.) Jun. 9, 2015.)

The scenario presented in this case is different than those at issue in prior published cases. The issues addressed on appeal in *Monterroso, J.J. v. M.F.* (2014) 223 Cal.App.4th 908 (*J.J.*)*,* and *Isidora M.*, all arose when a trial court entered a mutual restraining order after only one party had filed a restraining order request. In *Monterroso*, the court concluded that the lower court acted in excess of its

16

jurisdiction in issuing a mutual restraining order without the requisite findings under section 6305.  The appellant, a victim of domestic violence, sought a restraining order against her abusive husband.  She appeared before the lower court without counsel and agreed with the husband's attorney to make the restraining order mutual, even though husband had not filed a request.  (*Monterroso, supra,* 135 Cal.App.4th at pp. 735–736.)  The trial court accepted the parties' stipulation to a mutual restraining order without making any findings under section 6305.  The appellate court reversed, finding that "[w]hen a trial court issues such an order in contravention of its statutory obligation to make the required findings of fact, it acts in excess of its jurisdiction." (*Id.* at p. 736.)  The court remanded the matter, directing the trial court to rule upon the merits of appellant's request alone.  (*Id.* at p. 739.)  Presumably, the court did not remand for consideration of a mutual order and factual findings under section 6305 because the husband did not initially seek a restraining order.

In *J.J.*, a young child's mother filed a request for a restraining order against the father, but following an evidentiary hearing on mother's request, the trial court issued a mutual restraining order against both parties, finding that a single dispute over their son's jacket led to "'mutual combat'" where both parties "acted with aggression, which was interspersed with acts of defense." (*J.J.*, *supra,* 223 Cal.App.4th at p. 974.)  The mother appealed, arguing the requirements of section 6305 were not met and the

17

court's issuance of a mutual restraining order without a request from father violated her due process rights. Noting evidence of a lengthy history of domestic violence with father pushing and slapping mother and sending her threatening text messages, the appellate court found there was no substantial evidence to support a factual finding that appellant was a primary aggressor during the incident or in the relationship overall, and reversed only the portion of the mutual restraining order enjoining mother from contacting father. (*Id.* at pp. 975–976.)

In *Isidora M.*, the appellant sought a restraining order against her husband in 2014 based on alleged threats; at the time the appellant filed for the order, she was herself restrained by a criminal protective order protecting her husband based upon incidents of domestic violence occurring two years earlier. The trial court issued a five-year mutual restraining order even though the husband had not filed a separate request. In including the appellant in a mutual order, the trial court reasoned that it need not make any findings, but instead could rely on the appellant's prior criminal conviction as a substitute for findings. On appeal, the *Isidora M.* court focused on the trial court's authority "to issue a mutual restraining order *without a reciprocal request by the responding party*." (*Isidora M., supra,* 239 Cal.App.4th at pp. 17–18.) Based upon the statutory requirements of the DVPA, the legislative history of the 1995 amendment to section 6305, and procedural due process considerations, the court determined that "[a] trial court

may issue a mutual domestic violence restraining order under section 6305 only if both parties have filed requests for such relief, so as to give the requisite notice to the opposing party." (*Id.* at p. 14.) *Isidora M.* also found, "the trial court erred in substituting the bare fact of Isidora's guilty plea to a charge of domestic violence for detailed findings of fact indicating that she acted primarily as an aggressor and not primarily in self-defense as required by section 6305." (*Id.* at p. 23.) The appellate court reversed the mutual restraining order as to the appellant only, and affirmed it in all other respects. (*Ibid.*)

In the case before us, both parties submitted written requests for restraining orders and both requests were part of the same hearing. Mother argued at the hearing, "even if a restraining order is granted, I wanted to, at least, be semi both ways." When the court began questioning mother about the basis for her restraining order request, father's counsel interjected, stating "there is no evidence here to issue a mutual restraining order. In order for the court to issue mutual restraining orders, the court has to find that both parties acted as primary aggressors and neither party has acted primarily in self defense. That isn't what is happening here." The court responded by noting that there was undisputed evidence of violence committed in front of the child, and continued, "I understand what you're saying, however, if there are independent acts of domestic violence, you don't have to -- I mean, you find one act here, and one

19

act here, it's not where there's one incident, and one person is the primary aggressor, and the other one is not."

The trial court erred when it interpreted section 6305 as not requiring factual findings when two parties seek restraining orders against each other based on separate incidents. The language of section 6305, its reference to Penal Code section 836, subdivision (c)(3), the legislative history, and the case law all support a requirement for express findings, regardless of whether the two requests arise from the same incident or different incidents. Section 6305 states, in relevant part, that a "court shall not issue a mutual order . . . unless . . . [t]he court makes detailed findings of fact that both parties acted as a primary aggressor and that neither party acted primarily in self-defense." Nothing in the language limits the requirement to orders arising from a single incident.[8] By separating out for analysis each party's claim of abuse against the other, and

_____

[8] Penal Code section 836, subdivision (c)(3) does provide that the responding officer identify "the dominant aggressor involved in the incident." We do not read this language as limiting a court's obligation, under section 6305, to making findings only if it issues mutual restraining orders arising out of the same incident. Rather, the use of the word incident in the relevant Penal Code section simply acknowledges that the section addresses situations where peace officers are responding to an incident and making decisions about arrests in connection with that incident. In contrast, the court's role in issuing restraining orders under the DVPA is not by definition limited to a single incident.

issuing restraining orders against both parties as if incidents occurring at different times must be wholly unrelated, a court does not give full effect to the statutory directive that it "shall consider" both "the history of domestic violence between the persons involved" and "protect[ing] victims of domestic violence from continuing abuse." (§ 6305, subd. (b); Pen. Code, § 836, subd. (c)(3)(A) & (D).)

Permitting courts to avoid making the required findings in circumstances where each party's allegations of abuse arise from a different incident risks undermining central policies behind the fact finding requirement added to section 6305 in 1995: ensuring courts do not issue mutual orders as a matter of expediency, or simply because an abused party, in order to get their own protection, yields to their abuser's request for a mutual order. (See *Isidora M., supra,* 239 Cal.App.4th at pp. 19–21; *Conness, supra,* 122 Cal.App.4th at p. 204.)

The cases also lend support to our conclusion that the requirement to make detailed findings in section 6305 applies regardless of whether the orders arise from separate incidents. In *Isidora M.,* the court assumed such a requirement without explicitly addressing the question. In that case, the ex-wife was alleged to have engaged in acts of abuse in May 2012, and the ex-husband was alleged to have engaged in acts of abuse almost two years later, in February 2014. (*Isidora M., supra,* 239 Cal.App.4th at p. 14.) The *Isidora* court found section 6305 applicable, and reversed the trial court's entry of a mutual order because of its failure to

make the detailed findings. (*Id.* at pp. 18–19.) The court's factual analysis in *J.J.* also underscores how the requirement of detailed factual findings helps ensure that the defensive act of someone who is a victim of domestic abuse is not considered in isolation from its larger context and erroneously seen as an act of aggression for which the person should be restrained. (See *J.J.*, *supra*, 223 Cal.App.4th at p. 975 ["The single act of pushing M.F. away does not support a finding that she acted *primarily* as aggressor, especially in view of M.F.'s history of abuse against her"].)

The two orders issued by the court against mother and father on May 23, 2017, following a combined evidentiary hearing, constitute a mutual order triggering the requirements of section 6305.[9] The court erred when it issued the mutual order without making the findings required under section 6305, i.e., that both parties acted primarily as aggressors and that neither party acted primarily in self-defense.[10]

_____

[9] The court stated, "I'm going to restrain each party from harassing or following or stalking, or any of those things to the other party, and I'm going to issue a restraining order against communicating with the other party . . . . [¶] . . . [¶] So, I'm going to eliminate their contact . . . . I'm going to order each person to stay 100 yards away from the other person . . . ."

[10] Father asks the court to rule that section 6305 applies any time two parties seek restraining orders against

***Substantial evidence to support a finding that father
was a primary aggressor***

In his appeal, father seeks to reverse only the
restraining order entered against him, leaving the
restraining order against mother in place.  But if the
infirmity in the court's ruling was a failure to make factual
findings, and there is evidence upon which the court might
base such a finding, then the validity of both restraining
orders is in doubt.  Having determined that the court's
failure to make required findings before issuing mutual
restraining orders was based upon an error of law, we now
consider whether the proper remedy is to only reverse the
restraining order against father, or to remand the matter for
the required factual findings.

In determining whether substantial evidence exists to
support a court's order, "'we may not confine our

---

each other, and those requests for restraining orders are
pending at the same time, even if not addressed at the same
hearing.  Our holding today is intentionally narrow, and is
necessarily limited to the procedural posture of the case
before us: where competing requests for restraining orders
come before the court at the same hearing.  We decline to
address procedural scenarios not present in this case.  (See
*Conness, supra*, 122 Cal.App.4th at pp. 202–203 [discussing
the challenges of non-simultaneous restraining orders and
the application of section 6305 to restraining order requests
that are not pending at the same time].)

consideration to isolated bits of evidence, but must view the whole record in a light most favorable to the judgment, resolving all evidentiary conflicts and drawing all reasonable inferences in favor of the decision of the trial court. [Citation.] We may not substitute our view of the correct findings for those of the trial court; rather, we must accept any reasonable interpretation of the evidence which supports the trial court's decision. However, we may not defer to that decision entirely. "[I]f the word 'substantial' means anything at all, it clearly implies that such evidence must be of ponderable legal significance. Obviously the word cannot be deemed synonymous with 'any' evidence. It must be reasonable in nature, credible, and of solid value; it must actually be 'substantial' proof of the essentials which the law requires in a particular case." [Citations.]' [Citation.]" (*DiMartino v. City of Orinda* (2000) 80 Cal.App.4th 329, 336.)

Father's argument on appeal is limited to the evidence and findings necessary for a mutual restraining order under section 6305; he does not argue there was inadequate evidence to support the court's decision to issue a restraining order against him. The record contains substantial evidence to support a finding that father was acting as a primary aggressor and not in self-defense.

The evidence that father acted as a primary aggressor in at least one incident is stronger than that at issue in *J.J.*, where the appellate court found no substantial evidence to support a finding that mother acted as a primary aggressor,

24

given the evidence of a long history of father perpetrating physical violence against mother, as compared to a single act of mother pushing father away when he approached mother and their son during a confrontation about the son's jacket. (*J.J.*, *supra*, 223 Cal.App.4th at pp. 975-976.)  The appellate court in *J.J.* reversed only the order restraining mother and left the order restraining father in place, rather than remanding for factual findings.  Here, we express no view on whether father should be found to be a primary aggressor and not acting primarily in self-defense.  Our inquiry is limited to whether there is substantial evidence to support such a finding, and we find sufficient evidence in the record to warrant a remand for the court to make its own factual determination.  Among the evidence that might support a finding is evidence of numerous phone calls to mother from a blocked number and evidence of police involvement in the visitation exchange on March 4, 2017.  If the trial court determines there is not enough evidence to support the required factual findings justifying a mutual restraining order, it must determine which party's request for restraining order should be granted and which should be denied.

## DISPOSITION

The court's mutual restraining orders are reversed, and the matter is remanded for factual findings and reconsideration of the restraining order requests based on those findings.  The parties are to bear their own costs on appeal.

MOOR, J.

We concur:

BAKER, Acting P.J.

KIN, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.