Filed 8/21/20  Salarkia v. Faghihi CA2/1

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| SHAHRZAD SALARKIA, | B296826 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 18STFL09867) |
| v. | |
| JONAS FAGHIHI, | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Mark Juhas, Judge.  Affirmed.

LA Law, Inc., and Fari Bari Nejadpour for Defendant and Appellant.

Law Office of Corey Evan Parker, Corey Evan Parker; The Appellate Law Firm and Berangere Allen-Blaine for Plaintiff and Respondent.

_____

The Domestic Violence Prevention Act (DVPA) (Fam. Code[1] § 6200 et seq.) authorizes a court to issue a protective order to prevent a recurrence of domestic violence. (*Conness v. Satram* (2004) 122 Cal.App.4th 197, 200.) The DVPA broadly defines abuse to include not only acts causing bodily injury, but also acts placing a person in apprehension of injury, harassment, and disturbing a domestic partner's peace. (§§ 6203, subd. (a) & 6320, subd. (a); *Phillips v. Campbell* (2016) 2 Cal.App.5th 844, 852; see also *In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483, 1494.)

Jonas Faghihi and Shahrzad Salarkia were married for 20 years and have two children, an adult daughter, T.F. and a minor son. The family court issued a permanent restraining order protecting Salarkia from Faghihi and, at the same time, denied Faghihi's application for a restraining order, finding his testimony lacked credibility. The family court also indicated that Faghihi's application for a temporary restraining order protecting himself and the couple's children was based on fabricated evidence and constituted an additional example of domestic violence.

Faghihi challenges the restraining order protecting Salarkia and the denial of a restraining order to protect him. Faghihi argues that no substantial evidence supported a restraining order protecting Salarkia. Faghihi fails to summarize the evidence in the light most favorable to the order as our standard of review requires. Applying the correct standard, we conclude the record reveals substantial evidence that Faghihi

---

[1] Undesignated statutory citations are to the Family Code.

physically abused his wife over the course of their marriage as Salarkia and their daughter T.F., testified.

Ignoring the family court's credibility findings, Faghihi argues that as a matter of law, the family court was required to issue a restraining order protecting him from Salarkia. Because the family court discredited Faghihi's testimony that he was abused, *no* evidence supported his request for a restraining order, and the family court properly denied it.

Finally, Faghihi argues that the family court erred in applying the wrong standard in issuing a restraining order because the family court found that Faghihi's abuse of the legal process constituted domestic violence. Faghihi cites no legal support for his contention. The case law uniformly supports the conclusion that physical abuse is not required to support a domestic violence restraining order. (*In re Marriage of Nadkarni*, *supra*, 173 Cal.App.4th at p. 1496.) Faghihi does not argue, and no reasonable person could argue that Faghihi did not disturb his wife's peace when he caused her arrest, forced her out of the family home, and prevented her from seeing her children based on what the family court found was a fabricated story. Disruption of a person's peace is a ground for a domestic violence restraining order. (§§ 6203, subd. (a) & 6320, subd. (a); *Phillips v. Campbell*, *supra*, 2 Cal.App.5th at p. 852; see also *In re Marriage of Nadkarni*, at p. 1494.) Even if arguendo the family court applied the incorrect standard, Faghihi demonstrates no prejudice. The incidents of physical abuse over the couple's marriage supported the restraining order protecting Salarkia.

Faghihi relies solely on evidence the family court discredited and ignores the evidence supporting the family court's

orders. Accordingly, we affirm the domestic violence restraining order protecting Salarkia and affirm the denial of a restraining order protecting Faghihi.

## BACKGROUND

Apparently, both Salarkia and Faghihi applied for permanent restraining orders; those applications are not included in the record. Over three days, the family court heard testimony concerning Salarkia and Faghihi's applications for permanent restraining orders. Both claimed that the other was abusive. At the conclusion of the three-day trial, the court made express credibility determinations, described in more detail below.

### 1. *Faghihi's Testimony*

The italicized testimony indicates testimony expressly discredited by the family court.

Faghihi and Salarkia were married for 20 years. On July 13, 2018, Faghihi received a text from his girlfriend, and when Salarkia saw the text early in the next morning, Salarkia became angry. *Salarkia threatened to kill Faghihi.* Salarkia hid Faghihi's phone in their daughter's bedroom. Faghihi eventually found his phone under his daughter's bed.

Later that day, Faghihi and his girlfriend went to a restaurant for lunch. Salarkia and her niece *followed* Faghihi to the restaurant, and Salarkia confronted Faghihi's girlfriend. Salarkia told Faghihi not to come home *because she was " 'going to get you killed.' "* (Italics added.) *Faghihi was afraid.* Faghihi did not spend the night in the family home, but instead stayed at a friend's house.

On July 15, 2018, Faghihi went to the family home at about 11 a.m. *"As soon as I came back to the house to get my clothes, I*

4

*saw her in the kitchen with a pair of gloves, latex gloves, blue."*
*Salarkia held a knife and threatened to kill Faghihi. Salarkia*
*said, "I'm going to kill you, kill the kids, and kill myself." Holding*
*a kitchen knife, Salarkia said, "You mother fucker. I'm going*
*to . . . cut your balls, your penis. I'm going to . . . kill you, kill the*
*kids, kill myself."* (Italics added.) *Salarkia approached Faghihi*
*with the knife. Faghihi feared for his safety.*

Faghihi initially testified that he called 911 and then went into a room in the house. During cross examination, Faghihi testified that *he went into a guesthouse.* Faghihi testified that when Salarkia came after him he was in the guesthouse. The court discredited the testimony that Faghihi went to the guesthouse because a tenant was living in the guesthouse at that time.

Salarkia's counsel impeached Faghihi concerning his testimony that Faghihi threatened to kill him. For example, when counsel asked Salarkia why he went to the house on July 15, Faghihi testified that he "didn't take it [Salarkia's threat] that seriously." During cross-examination, Faghihi testified that Salarkia called the police before threatening him with a knife. When counsel asked "so to believe your story, we'd have to believe that she called the police, knew that they were on the way, and then decided to grab a knife and threaten you with it," Faghihi responded, "You can ask this question from her."

During cross-examination, Faghihi acknowledged that he told his children that Salarkia was going to call the police on him so he called first.

## 2. *Salarkia's Testimony*

Salarkia testified that over the course of her long-term marriage, Faghihi slapped her, hit her, and pushed her multiple

5

times. Once Faghihi pushed her down the stairs. Salarkia described Faghihi as controlling and "very physically abusive."

On July 14, 2018—the day before she applied for a restraining order—Faghihi grabbed her neck and told her, " 'You're dealing with the wrong person.' " Salarkia thought Faghihi was strangling her.

The next day, Salarkia located Faghihi from a shared application on their cell phones and went to the restaurant where Faghihi and his girlfriend were eating lunch. After Salarkia left the restaurant, Faghihi told Salarkia, " 'You know, you're dealing with the wrong person.' " Salarkia went to the police station and filed a report. She told the officer that Faghihi "always" abused her and hit her the night before. Officers told her she could not get a restraining order because it was the weekend.

On July 15, 2018, Faghihi returned to the family home, and Salarkia asked him to leave. Salarkia told Faghihi that she reported him to the police, and Faghihi responded angrily. Faghihi refused to leave. Salarkia called 911. Salarkia told the 911 operator that her husband had hit her two days earlier and she was afraid he would hit her again. Salarkia wanted to avoid Faghihi hitting her and wanted to avoid the children seeing Faghihi's abusive conduct.

Faghihi told Salarkia, "Let's see who is going to go to jail. You made the wrong call." Salarkia left the house and waited for police outside. Faghihi followed her outside.

Salarkia testified that she did not retrieve a kitchen knife. Salarkia did not threaten Faghihi with a knife. Salarkia did not put on latex gloves. Salarkia heard Faghihi tell the police Salarkia had a knife. Salarkia testified, "I think he set me up." Officers told Salarkia that she was arrested because she had a

knife and attacked Faghihi. Salarkia testified that no criminal charges ensued.

Salarkia testified that Faghihi did not go into the guesthouse because a tenant was living there. The tenant was Salarkia's best friend.

When officers arrived after her 911 called, Faghihi lied to officers causing Salarkia to be arrested and preventing Salarkia from seeing her children. A criminal restraining order issued protecting Faghihi from Salarkia. It was undisputed that Faghihi extended the restraining order, and that the restraining order granted him exclusive possession of the family home. Salarkia told the court, "I have lost basically everything." She purchased two mattresses. Faghihi changed the locks so Salarkia could not enter the house.

T.F. testified that she observed Faghihi throw Salarkia down the stairs. T.F. observed Faghihi hit Salarkia. T.F. observed Faghihi push Salarkia. T.F. testified that on July 14, 2018 at about 2:30 a.m. Salarkia told T.F. that Faghihi hit Salarkia.

On July 15, 2018, a tenant lived in her parent's guesthouse. T.F. testified that she observed her parents' interactions from outside the house. T.F. testified that Faghihi did not enter the guesthouse. T.F. observed Salarkia stay outside the house and Faghihi "kept going in and out of the house." T.F. did not observe Salarkia put on a latex glove.

T.F. testified that after her mother was arrested, she asked Faghihi why he included her as a protected person on the restraining order. Faghihi did not respond that Salarkia threatened him with a knife. Faghihi never said that Salarkia threatened to kill him, T.F., or her brother with a knife.

7

T.F. testified that Salarkia did not have much furniture since she moved out of the family home. When T.F. stayed with Salarkia, they shared a bed.

### 3. *Officer Raul Hernandez*

On July 15, 2018, Officer Hernandez responded to a 911 call from Salarkia and a subsequent 911 call from Faghihi. Salarkia did not report on that day—July 15, 2018—that Faghihi touched her in any way, but reported that two days earlier, Faghihi assaulted her.

Faghihi had no injuries on July 15, 2018. Based on statements from Faghihi, Officer Hernandez arrested Salarkia for criminal threats. Another officer transported Salarkia to county jail. Officer Hernandez issued an emergency protective order to protect Faghihi from Salarkia.

### 4. *Family Court's Findings and Orders*

The court indicated that Faghihi was the aggressor. The court stated, "I don't find it credible at all that she threatened to cut—to physically attack him, to cut off his penis and his testicles." The court also discredited Faghihi's testimony that Salarkia "put[s] on a surgical glove, grabs the knife" and threatened Faghihi. The court concluded, "That story makes no sense to me. So I don't find that story credible." The court indicated that "I don't believe it went down the way he said it went down." The court found T.F. very credible and concluded that T.F.'s testimony further discredited Faghihi.

The court further stated that Faghihi's fabrication of a story about domestic violence and obtaining a restraining order against Salarkia based on that fabricated story constituted domestic violence. The court stated that Faghihi's "misuse of the

court system is domestic violence." Faghihi's conduct also caused Salarkia to be arrested. Faghihi recognized that the children were "very afraid of the mother going to go to jail, losing her license."

The court granted Salarkia a restraining order for a period of 5 years. The court denied Faghihi a restraining order. The court ordered Faghihi to attend a 52-week batterer intervention program. The court awarded Salarkia primary physical custody of the minor child and permitted Faghihi visitation. On appeal Faghihi does not challenge the child custody and visitation order.

## DISCUSSION

Faghihi argues that no substantial evidence supported the family court's decision to award Salarkia a restraining order. Faghihi also appears to argue that the family court was required to award him a restraining order because his request was supported by substantial evidence.

Section 6203 defines abuse as "intentionally or recklessly caus[ing] or attempt[ing] to cause bodily injury," "[s]exual assault," or placing a person in "reasonable apprehension of imminent serious bodily injury . . . ." (§ 6203, subd. (a).) Section 6203 also defines abuse as "engag[ing] in any behavior that has been or could be enjoined pursuant to Section 6320." (§ 6203, subd. (a)(4).) Section 6320 authorizes the court to issue an ex parte order "enjoining a party from molesting, attacking, striking, stalking, threatening, sexually assaulting, battering, credibly impersonating . . . harassing, telephoning, . . . destroying personal property, contacting, either directly or indirectly, by mail or otherwise, coming within a specified distance of, or *disturbing the peace of the other party*, and, in the discretion of

9

the court, on a showing of good cause, of other named family or household members. (§ 6320, subd. (a), italics added.)

## A. Substantial Evidence Supported the Restraining Order Identifying Salarkia as the Protected Person

"We review issuance of a protective order for abuse of discretion, and the factual findings necessary to support the protective order are reviewed for substantial evidence. [Citation.] 'We resolve all conflicts in the evidence in favor of respondent, the prevailing party, and indulge all legitimate and reasonable inferences in favor of upholding the trial court's findings.' " (*Parisi v. Mazzaferro* (2016) 5 Cal.App.5th 1219, 1226, disapproved on another ground in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1003, fn. 7; see also *Gonzalez v. Munoz* (2007) 156 Cal.App.4th 413, 420 [grant of protective order under the DVPA reviewed for abuse of discretion].) Under the substantial evidence standard, "[o]ur task '*begins* and *ends* with the determination as to whether, *on the entire record*, there is substantial evidence, contradicted or uncontradicted,' " that supports the challenged order. (*Garcia v. Myllyla* (2019) 40 Cal.App.5th 990, 1000.)

Faghihi's challenge to the sufficiency of the evidence to support the restraining order protecting Salarkia is premised on his claim that Salarkia's testimony was not credible because it was inconsistent. Faghihi's argument ignores the appropriate standard of review. This court does not reevaluate credibility. Instead, this court resolves all conflicts in the evidence in favor of respondent. (*Parisi v. Mazzaferro, supra*, 5 Cal.App.5th at p. 1226.)

There was substantial evidence in support of a restraining order protecting Salarkia, which we now summarize. Faghihi

10

hit, pushed and slapped Salarkia. Faghihi pushed Salarkia down the stairs. Salarkia described Faghihi as controlling and "very physically abusive." On July 14, 2018, Faghihi grabbed Salarkia's neck, and she thought he was trying to strangle her. T.F. corroborated Salarkia's testimony that Faghihi engaged in abusive conduct, having observed Faghihi push Salarkia down the stairs and hit Salarkia. The testimony of one witness may constitute substantial evidence (*In re Marriage of Fregoso & Hernadez* (2016) 5 Cal.App.5th 698, 703), and here multiple witnesses testified as to Faghihi's abuse. The fact that it was undisputed that Faghihi did not physically abuse Salarkia on July 15, 2018 does not undermine the numerous incidents of abuse supporting the restraining order. He abused her on multiple other occasions.

## B. No Credible Evidence Supported a Restraining Order Protecting Faghihi

Faghihi argues that the family court was required to enter a restraining order protecting him. When a court determines the party with the burden of proof failed to carry that burden, an appellate court may reverse the decision only if the evidence compels a finding in favor of the appellant as a matter of law. (*Dreyer's Grand Ice Cream, Inc. v. County of Kern* (2013) 218 Cal.App.4th 828, 838; *Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 466.) Under this standard, a finding is compelled only if the appellant's evidence was " ' "(1) uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." ' " (*Ibid*, but see *Gonzalez v. Munoz, supra*, 156 Cal.App.4th

11

at p. 420 [appellate court reviews the denial of a restraining order for abuse of discretion].)

In advancing his argument on appeal, Faghihi grossly mischaracterizes the record, ignores the family court's credibility findings, and ignores the well established principle that a trial court may discredit uncontested evidence. Faghihi's entire argument on the merits of his claim is as follows: "Appellant's testimony that Respondent threatened to castrate him [citation] and to murder Appellant and the couple's children [citation] was unimpeached, uncontradicted and uncontested."

First, Faghihi ignores the family court's credibility findings. The family court rejected Faghihi's testimony that Salarkia threatened to castrate him and kill the couple's children. The family court found that Faghihi lacked credibility. It is well established that the trier of fact is the exclusive judge of credibility. (*Oldenburg v. Sears, Roebuck & Co.* (1957) 152 Cal.App.2d 733, 742.)

Second, Faghihi mischaracterizes the record. Faghihi's testimony was impeached, contradicted, and contested. His testimony was impeached during cross-examination; it was contradicted by Salarkia's testimony and T.F.'s testimony, and it was contested throughout the three-day trial. Faghihi's entire argument is irreconcilable with the record.

Even if Faghihi could show that his testimony were uncontested, uncontradicted and unimpeached, that showing would not entitle him to a restraining order. Faghihi ignores the bedrock principle that a trier of fact may discredit the testimony of a witness even if it is uncontested. (*LandWatch San Luis Obispo County v. Cambria Community Services Dist.* (2018) 25 Cal.App.5th 638, 643; *Palmieri v. State Personnel Bd.* (2018)

12

28 Cal.App.5th 845, 857; *Hicks v. Reis* (1943) 21 Cal.2d 654, 659–660.)  Here, the family court expressly discredited *all* of Faghihi's claims that Salarkia threatened or otherwise abused him.  Therefore, there was *no* basis to award Faghihi a restraining order.

## C.    Faghihi Fails to Show the Family Court Applied the Wrong Legal Standard

Faghihi argues that the family court applied the wrong standard when it issued a restraining order identifying Salarkia as the protected person.  Faghihi's argument is as follows:  "In this case, the trial court invented the litigation-as-domestic-violence standard, and even that court had to acknowledge that no case or statute supports it.  By fabricating a standard from whole cloth, the trial court engaged in 'whimsy' and 'uncontrolled power' that 'transgresses the confines of the applicable principles of law.'  Appellate courts call such action abuse of discretion, and trial court's abuse of discretion demands reversal."  Faghihi's argument is unpersuasive for numerous, independent reasons.

### 1.    Faghihi forfeited the argument by failing to cite relevant legal authority

Faghihi argues that the family court applied the wrong standard but fails to identify the correct standard.  Faghihi cites no authority supporting his claim that the family court deviated from the correct standard.  He cites two cases—*Gonzalez v. Munoz, supra,* 156 Cal.App.4th 420 and *City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1297 that are irrelevant to the merits of his legal contention.

In *Gonzalez*, Division Seven of this court considered whether the court erred in failing to award a mother custody of a

13

child during the pendency of a restraining order.  (*Gonzalez v. Munoz*, *supra*, 156 Cal.App.4th at p. 419.)  The appellate court did not consider whether filing frivolous litigation based on a fabricated story could constitute domestic violence.  *City of Sacramento v. Drew*, *supra*, 207 Cal.App.3d 1287, the other case Faghihi cites, concerns an appeal from the denial of an award of attorney fees under Code of Civil Procedure section 1021.5, which governs attorney fees in an action for the enforcement of an important right affecting the public interest.  (*Id*. at p. 1292.)  It does not address an issue relevant to the merits of Faghihi claim.

By failing to cite to legal authority in support of his argument, Faghihi forfeited the argument.  (*Ewald v. Nationstar Mortgage, LLC* (2017) 13 Cal.App.5th 947, 948 [see also cases cited therein].)  "Where a point is merely asserted by appellant's counsel without any argument of or authority for the proposition, it is deemed to be without foundation and requires no discussion by the reviewing court."  (*Atchley v. City of Fresno* (1984) 151 Cal.App.3d 635, 647.)

## 2. Assuming Faghihi preserved the argument, his argument is inconsistent with the uniform case law

We review de novo whether the family court applied the correct standard to the issue of its discretion to grant Salarkia a restraining order.  (*N.T. v. H.T.* (2019) 34 Cal.App.5th 595, 601–602.)  A discretionary order based on an incorrect legal assumption is subject to reversal.  (*Rodriguez v. Menjivar* (2015) 243 Cal.App.4th 816, 820.)  "The DVPA's 'protective purpose is broad both in its stated intent and its breadth of persons protected.' "  (*N.T.*, *supra*, at p. 602.)  It includes both physical

abuse "as well as acts that 'destroy[ ] the mental or emotional calm of the other party.' " (*Rodriguez, supra*, at p. 820.)

Section 6203 incorporates harassment and disturbing the peace into the definition of domestic violence. (§ 6203, subd. (a)(4) [incorporating section 6320].) As one court has explained: " 'Violence,' as that word is commonly defined, is not a prerequisite for obtaining a restraining order under the DVPA. The dictionary definition of 'violence' is 'the exertion of any physical force so as to injure or abuse.' (Webster's 3d New Internat. Dict. (1981) p. 2554.) The DVPA, however, defines 'domestic violence' as 'abuse.' (§ 6211.) 'Abuse is not limited to the actual infliction of physical injury or assault.' (§ 6203, subd. (b).) For purposes of the DVPA, 'abuse' means, inter alia, '[t]o engage in any behavior that has been or could be enjoined pursuant to Section 6320.' (§ 6203, subd. (a)(4).) Section 6320, subdivision (a) permits the court to enjoin a party from 'harassing . . . or disturbing the peace of the other party . . . .' " (*Phillips v. Campbell, supra*, 2 Cal.App.5th at p. 852; *N.T. v. H.T.* (2019) 34 Cal.App.5th 595, 603; *In re Marriage of Nadkarni, supra*, 173 Cal.App.4th at p.1494; *Conness v. Satram, supra*, 122 Cal.App.4th at pp. 201–202.)

" '[T]he plain meaning of the phrase "disturbing the peace of the other party" in section 6320 may be properly understood as conduct that destroys the mental or emotional calm of the other party.' " (*N.T. v. H.T., supra*, 34 Cal.App.5th at p. 602; see also *In re Marriage of Nadkarni, supra*, 173 Cal.App.4th at p. 1497.) No reasonable argument could be made that Faghihi did not disturb Salarkia's peace when he fabricated a story to have a restraining order issued protecting Faghihi, which in turn caused Salarkia's arrest, forced her to move out of the family home, and

15

prevented her from seeing her children.  (Cf. *Parisi v. Mazzaferro*, *supra*, 5 Cal.App.5th at pp. 1219, 1225, 1228 [unfounded attempt to obtain a restraining order supports a civil harassment restraining order.])  Without explanation, Faghihi completely ignores section 6320 in arguing that the family court applied the incorrect legal standard in granting Salarkia request for a permanent restraining order.

### 3. Faghihi demonstrates no prejudice from the alleged application of the wrong standard

On appeal, it is the appellant's responsibility affirmatively to demonstrate prejudicial error.  (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)  " 'This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' "  (*Ibid*; see also *Jameson v. Desta* (2018) 5 Cal.5th 594, 609.)  Even if arguendo the family court erred in concluding that Faghihi perpetuated the abuse by fabricating evidence leading to Salarkia's arrest, ouster from her home and separation from her children, Faghihi demonstrates no prejudice. As detailed above, the record overwhelmingly supported granting Salarkia's request for a permanent restraining order.

## DISPOSITION

The domestic violence restraining order protecting Salarkia is affirmed. The denial of a domestic violence restraining order protecting Faghihi is affirmed. Costs are awarded to Salarkia.

NOT TO BE PUBLISHED.

BENDIX, Acting P. J.

We concur:

CHANEY, J.

SINANIAN, J.*

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.