Filed 11/9/21  Reina A. v. Alber S. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| REINA A., | B307632 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 19STFL12347) |
| v. | |
| ALBER S., | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Kimberly Dotson, Temporary Judge. (Pursuant to Cal. Const., art. VI, § 21.)  Reversed and remanded with directions.

Horvitz & Levy, Jeremy B. Rosen, Anna J. Goodman and Selene Houlis for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

_____

Appellant Reina A. (Reina) and respondent Alber S. (Alber) each filed a request for a domestic violence restraining order (DVRO) against the other. Following a combined hearing, the trial court issued mutual DVROs. Reina appeals from the DVRO enjoining her from specific acts of abuse against Alber. Because the trial court failed to make the necessary detailed findings of fact before issuing the mutual DVROs, as required by Family Code section 6305,[1] we reverse the DVRO against Reina and remand for further proceedings.[2]

## BACKGROUND

### I. *Reina's DVRO Request*

Reina filed her DVRO request on September 23, 2019, seeking protection from Alber. She explained that she feared for her life because Alber "exhibit[ed] violent behavior toward [her] and ha[d] made multiple threats against [her] life." Reina alleged the following:

In November 2018, Alber pushed and hit Reina's chest while telling her, "'Don't ask me what I'm doing or who I'm partying with.'" Bruises appeared on Reina's chest where Alber had hit her.

In January 2019, Alber came home intoxicated. Reina told him that she did not "want a marriage like this[.]" Alber responded, "'If you try to fuck my life, I am gonna fuck your life four times harder.'"

---

[1]    All further statutory references are to the Family Code unless otherwise indicated.

[2]    Alber did not file a respondent's brief or otherwise appear in this appeal. We resolve this appeal pursuant to California Rules of Court, rule 8.220(a)(2).

In April 2019, Alber became angry in the middle of the night and shoved Reina off the bed. Reina fell onto the wood floor and sustained a cut and bruise on her forearm.

In June 2019, Alber was upset that Reina would not buy him a new phone. He yelled, "'You're fucking stupid, this is all your fault. I fucking hate you. I'll fucking kill you." Later that month, Alber demanded that Reina give him an amount of cash that exceeded her daily withdrawal limit. Becoming increasingly angry and impatient, Alber punched a wall and stated, "'I punched the wall so other people didn't see me punch you.'"

In September 2019, Alber arrived at Reina's apartment intoxicated. He punched Reina's hand. As Reina tried to get away, Alber caught her and pinned her against a closed door. Reina closed her eyes in fear, but Alber pressed Reina's right eyelid open and forced her to look at him. Alber yelled, "'Look at me! I will find you and kill you and find you in another country and kill you, if you ever call the cops on me.'" Reina sustained a bruise on her shoulder and a swollen and bruised finger.

The most recent abuse described by Reina occurred on September 20, 2019, when Alber slammed his chest against Reina three times. Alber spit on Reina's face and threw food at her. Reina locked herself in the bathroom and called the police. Alber was arrested but released the next day.

The trial court issued a temporary restraining order on September 23, 2019, protecting Reina from Alber.

## II. *Petition for Dissolution of Marriage*

On October 15, 2019, Reina filed a petition for the dissolution of her marriage to Alber, citing irreconcilable differences.[3]

## III. *Alber's DVRO Request*

Alber filed his own request for a DVRO, on October 24, 2019, seeking protection from Reina. Alber alleged:

In September 2017, Reina arrived, drunk, at the home of one of Alber's friends. She pushed Alber, grabbed his phone, and began going through it.

In August 2018, Reina "became very possessive." Jealous of Alber's female friends, Reina "almost forbid [Alber] from having female friends and going out with [his] friends . . . ." Reina "attacked [Alber] with her fists, a pillow, headphone cords[,] and . . . sandals."

In April 2019, Alber returned home in the middle of the night, and Reina began to push him with her feet. That caused Reina to push herself off the bed, which she blamed on Alber.

Reina threatened Alber with divorce "just to see [him] get deported." Reina would use Alber's phone to send messages to his "female friends asking if they wanted to sleep with [him]." Alber claimed that he "never cheated" and "never treated [Reina] bad." Alber accused Reina of being "aggressive" and "stalking" him. He feared for his safety.

A temporary restraining order was issued on October 24, 2019, protecting Alber from Reina.

---

[3] The dissolution proceedings were pending when the mutual DVROs were later issued.

4

IV. *The Hearing*

The trial court heard both DVRO requests simultaneously on June 29, 2020.  The parties had previously stipulated to having a court commissioner serve as a temporary judge.  (See Cal. Const., art. VI, § 21.)

A.  Reina's testimony

Reina described the most recent incident of abuse, which allegedly occurred on September 20, 2019.  Alber got "very angry" with Reina when she asked him about an overdue phone bill.  Alber told her "to get the F out of the kitchen" and used his body to push her out.  Reina tried to return to the kitchen, but Alber told her "to get the F out again" and tried to take her phone.  Reina scratched Alber in self-defense.  Alber threw hot water at Reina and spit in her face.  Reina called the police, and Alber was arrested.

Previously, on September 7, 2019, Alber punched Reina's hand and threatened her life.  He "[p]ried" her eye open and said, "if you try to leave, I will fuck you, I will kill you, I will come through another country and find you."

On June 10, 2019, Alber threatened Reina and bullied her to get a phone.  He told Reina, "I hate you, get the fuck away from me or I'll kill you, I want an iPhone X."

In February 2019, Alber called Reina from San Francisco screaming.  Reina texted Alber's mother that he was screaming and asked her to "pray for him."  Alber called Reina back and threatened that if she called his mother again, he would kill her.

On January 31, 2019, Alber returned home drunk.  When Reina told Alber that theirs was not the type of marriage she wanted, Alber said, "fuck you, if you fuck me I will kill you; I will fuck your life four times harder if you try to come after me."

Reina also described incidents where Alber would throw her on the side of the bed. Reina accused Alber of "gaslighting" her. As for Alber's allegations against her, Reina testified that they were all lies.

B. Alber's testimony

Alber stated that Reina was "lying." He denied that he had thrown hot water at her. Instead, he testified that he had been cooking chicken when Reina grabbed the pan and threw the chicken in the sink. Alber put the pan back on the stove, but Reina grabbed the pan again and wanted to throw the hot water and chicken at Alber's face.

Alber stated that Reina had a "habit of grabbing . . . stuff and breaking it[,]" including his computer. Alber denied that he threatened to kill Reina. As for the alleged incident in January 2019, Alber denied that he threatened and bullied Reina to buy him a new phone. Rather, he "asked her to buy a phone for [him] because she broke [his] phone."

Alber described himself as "a very calm person" and accused Reina of instigating fights. He stated, "Every time she wanted to fight me, I would always step back." Reina would verbally "put [him] down." He denied ever doing anything to "harm" Reina. "I never put my hands on her. She would come after me. Every time something happened, she was the one attacking me, coming after me." Alber also accused Reina of hitting him with headphones.

C. Witness's testimony

Reina called Lieneyda A. (Lieneyda) as a witness. Lieneyda described being on a three-way conference call with Reina and Alber. Reina and Alber argued, and Alber said, "I'm

6

going to kill you, don't call my mother." He made the threat repeatedly.

D. <u>Issuance of mutual restraining orders</u>

Immediately following the parties' closing statements, the trial court stated that it believed both Reina's and Alber's testimony, but that it did not find Lieneyda to be credible. The court explained its decision to grant mutual restraining orders as follows:

"The court finds that both parties are mutual aggressors in this case and they both need to be restrained from one another. . . . This is a volatile relationship. There's a pending dissolution. The parties are not living together anymore, so the court is not concerned with the stay away because they can stay away from each other. The court is concerned with both their volatile behavior that they both exhibited based on the testimony and their moving papers and exhibits.

"The court is granting mutual restraining orders in these cases. The court finds that both [Reina] and [Alber]—[have] proven by a preponderance of the evidence that the parties have a qualifying relationship for a domestic violence restraining order.

"The court also finds both . . . [Reina] and . . . [Alber] were mutual aggressors in each of their respective restraining orders. With this, the court is granting mutual restraining orders against both parties."

Reina appealed.[4]

---

[4] Alber did not appeal from the DVRO issued against him.

**DISCUSSION**

I. *Standards of Review*

We review the trial court's issuance of a DVRO for abuse of discretion. (*J.J. v. M.F.* (2014) 223 Cal.App.4th 968, 975 (*J.J.*).) "'However, "[j]udicial discretion to grant or deny an application for a protective order is not unfettered. The scope of discretion always resides in the particular law being applied by the court, i.e., in the "'legal principles governing the subject of [the] action . . . .'"'" [Citation.] We review the court's factual findings supporting the mutual restraining order for substantial evidence." (*Ibid.*) To the extent that we are tasked with statutory interpretation, our review is de novo. (*Christensen v. Lightbourne* (2019) 7 Cal.5th 761, 771.)

II. *Applicable Law*

The purpose of the Domestic Violence Prevention Act (§ 6200 et seq.) "is to prevent acts of domestic violence, abuse, and sexual abuse and to provide for a separation of the persons involved in the domestic violence for a period sufficient to enable these persons to seek a resolution of the causes of the violence" (§ 6220). To effectuate this purpose, a trial court may issue a DVRO upon a showing "to the satisfaction of the court, [of] reasonable proof of a past act or acts of abuse."[5] (§ 6300, subd. (a).)

---

[5] "Abuse is not limited to the actual infliction of physical injury or assault" (§ 6203, subd. (b)) and includes "intentionally or recklessly caus[ing] or attempt[ing] to cause bodily injury" (§ 6203, subd. (a)(1)), sexual assault (§ 6203, subd. (a)(2)), "plac[ing] a person in reasonable apprehension of imminent serious bodily injury" (§ 6203, subd. (a)(3)), and behavior such as "stalking, threatening, . . . harassing, . . . destroying personal property, contacting, either directly or indirectly, by mail or

8

Additional procedural requirements apply before a trial court may issue *mutual* restraining orders. (§ 6305; *J.J.*, *supra*, 223 Cal.App.4th at p. 975.)  Among other things, the court must "make[] detailed findings of fact indicating that both parties acted as a primary aggressor and that neither party acted primarily in self-defense." (§ 6305, subd. (a)(2).)  "The clear purpose of this requirement is to avoid restraining a party who is not culpable, and section 6305 reflects the Legislature's understanding that reasonable self-defense is a defense to a claim of abuse." (*In re Marriage of G.* (2017) 11 Cal.App.5th 773, 779.)

"In determining whether both parties acted primarily as aggressors, the court must consider the provisions set forth in Penal Code section 836, subdivision (c)(3), 'concerning dominant aggressors.' (Fam. Code, § 6305, subd. (b).)  Penal Code section 836, subdivision (c) governs the conduct of peace officers in connection with making arrests in response to calls alleging violations of already issued restraining orders.  Subdivision (c)(3) addresses situations where the peace officer encounters persons who are subject to previously issued mutual restraining orders, directing that the officer 'make reasonable efforts to identify, and may arrest, the dominant aggressor involved in the incident.' (Pen. Code, § 836, subd. (c)(3).)  A 'dominant aggressor' is defined as 'the person determined to be the most significant, rather than the first, aggressor,' and Penal Code section 836, subdivision (c)(3) requires the officer to consider a number of factors in identifying the dominant aggressor, including '(A) the intent of the law to protect victims of domestic violence from

---

otherwise, coming within a specified distance of, or disturbing the peace of the other party" (§ 6320, subd. (a); see also § 6203, subd. (a)(4)).

continuing abuse, (B) the threats creating fear of physical injury, (C) the history of domestic violence between the persons involved, and (D) whether either person involved acted in self-defense.'" (*Melissa G. v. Raymond M.* (2018) 27 Cal.App.5th 360, 368–369, fn. omitted (*Melissa G.*).)

"A trial court has no statutory power to issue a mutual order enjoining parties from specific acts of abuse described in section 6320 without the required findings of fact. When a trial court issues such an order in contravention of its statutory obligation to make the required findings of fact, it acts in excess of its jurisdiction." (*Monterroso v. Moran* (2006) 135 Cal.App.4th 732, 736 (*Monterroso*); accord, *Melissa G.*, *supra*, 27 Cal.App.5th at p. 368.)

III. *Analysis*

Reina contends that the trial court lacked jurisdiction to issue a mutual restraining order against her because it failed to make the requisite findings of fact under section 6305.

We agree. The trial court made generalized findings on the record that Reina and Alber were "mutual aggressors[,]" but it did not "make[] detailed findings of fact indicating that both parties acted as a primary aggressor and that neither party acted primarily in self-defense" (§ 6305, subd. (a)(2)). Without such "detailed findings" the court "act[ed] in excess of its jurisdiction by entering a mutual restraining order." (*Monterroso*, *supra*, 135 Cal.App.4th at p. 734.)

As recently recognized by another appellate court, "there is a dearth of authority on what constitutes 'detailed findings of fact' under subdivision (a)(2) of section 6305[.]" (*In re Marriage of Everard* (2020) 47 Cal.App.5th 109, 127 (*Everard*); see also *id.* at p. 123.) Nevertheless, "in other contexts the concept of detailed

findings has been understood to require sufficient factual findings or analysis for a reviewing court to assess the factual or legal basis for the trial court's decision." (*Id.* at p. 127.)

Here, the trial court did not mention—let alone discuss in detail—the terms primary aggressor or self-defense. This cannot satisfy any reasonable definition of "detailed findings" within the meaning of section 6305 regarding these factors. (§ 6305, subd. (a)(2) [requiring the trial court to "make[] detailed findings of fact indicating that both parties acted as a primary aggressor and that neither party acted primarily in self-defense"]; Merriam-Webster's Collegiate Dict. (11th ed. 2003) p. 340, col. 1 [defining the adjective "detailed" as "marked by abundant detail or by thoroughness in treating small items or parts"].) The absence of "sufficient factual findings or analysis" impedes our ability "to assess the factual or legal basis for the trial court's decision." (*Everard*, *supra*, 47 Cal.App.5th at p. 127.)

We therefore reverse the DVRO against Reina and remand for the trial court to determine whether both parties acted as primary aggressors and if either party acted primarily in self-defense. As to whether both parties acted as primary aggressors, the court must consider the provisions of Penal Code section 836, subdivision (c)(3), regarding dominant aggressors. (§ 6305, subd. (b); *K.L. v. R.H.* (Sept. 30, 2021, G059109) ___ Cal.App.5th ___ [2021 Cal.App.Lexis 898, at pp. *3, *20–*21]; *Melissa G.*, *supra*, 27 Cal.App.5th at pp. 368–369.)

We disagree with Reina's contention that the trial court should not be afforded an opportunity on remand to make additional findings and, possibly, reissue a DVRO against her. Reina contends that there is no substantial evidence that she acted as a primary aggressor or did not act in self-defense. (See

11

§ 6305, subd. (a)(2).) While we express no view on whether the trial court should make such findings, at this juncture we cannot say that no evidence exists that, if believed by the court and from which certain inferences are made, could support those findings. The court is entitled to credit Alber's testimony that Reina instigated fights and repeatedly attacked him. (See *Linear Technology Corp. v. Tokyo Electron Ltd.* (2011) 200 Cal.App.4th 1527, 1534 [an appellate court "may not reweigh the evidence or judge the credibility of witnesses unless their testimony is 'inherently improbable or clearly false[]'"]; *Thomson v. International Alliance of Theatrical Stage Employees & Moving Picture Machine Operators* (1965) 232 Cal.App.2d 446, 454 [where the evidence is in conflict, "the trial court is free to believe whichever evidence it deems to be the weightier"].)

We decline to entertain Reina's alternative argument that, if the matter is remanded for the required factual findings, the trial court must hold a new hearing because it made numerous prejudicial evidentiary errors.[6] The issues raised are not ripe for our review, as the pertinent "'. . . facts have [not] sufficiently congealed to permit an intelligent and useful decision to be made.'" (*Vandermost v. Bowen* (2012) 53 Cal.4th 421, 452; see also *Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 170 ["The ripeness requirement, a branch of the

---

[6] Specifically, Reina contends that the trial court (1) mischaracterized the hearsay rule, which resulted in the exclusion of a police report; (2) failed to advise Reina of her right to directly examine Lieneyda or for redirect examination; and (3) discouraged Reina from introducing evidence regarding Alber's immigration-related motive for seeking a DVRO.

doctrine of justiciability, prevents courts from issuing purely advisory opinions"].)

We do not know if the trial court will find sufficient evidence to "make[] detailed findings of fact indicating that both parties acted as a primary aggressor and that neither party acted primarily in self-defense." (§ 6305, subd. (a)(2).) Accordingly, even if we were to find that the court made any evidentiary error, we would be unable to determine if such error is prejudicial. (*Santina v. General Petroleum Corp.* (1940) 41 Cal.App.2d 74, 77 ["[T]here is no room for the presumption that prejudice results from the fact of error alone. The fact of prejudice is just as essential as the fact of error"].)

## DISPOSITION

We reverse the DVRO issued against Reina and remand for the trial court to make detailed findings, pursuant to section 6305, indicating whether both parties acted as a primary aggressor and if either party acted primarily in self-defense. Reina is entitled to her costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
ASHMANN-GERST

We concur:


_____, P. J.
LUI


_____, J.
HOFFSTADT

13