Filed 2/17/26; Certified for Publication 3/12/26 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re the Marriage of MARCIE and MICHAEL HOCH. | |
| MARCIE HOCH,<br><br>　　Appellant,<br><br>　　　　v.<br><br>MICHAEL HOCH,<br><br>　　Appellant. | G063467<br><br>(Super. Ct. No. 23D001088)<br><br>O P I N I O N |

　　　　　　Appeals from orders of the Superior Court of Orange County, Yolanda V. Torres, Judge. Affirmed in part and reversed in part.

　　　　　　Law Offices of Lisa R. McCall, Lisa R. McCall and Erica M. Barbero for Appellant Marcie Hoch.

　　　　　　Decker Law, James Decker, Griffin Schindler and Chris Jones for Appellant Michael Hoch.

　　　　　　　　　　*　　　　　*　　　　　*

## INTRODUCTION

Marcie Hoch and Michael Hoch[1] were married in September 1999. In February 2023, Marcie filed a petition for legal separation, which she later amended to allege marital dissolution. Both Marcie and Michael are practicing members of the Jehovah's Witnesses faith, a fact of significance to this matter, and both have filed notices of appeal.

In his appeal, Michael challenges four orders issued by the family court: (1) an order imposing monetary sanctions against him pursuant to Family Code section 271[2] based on his refusal to stipulate to permitting Marcie to amend her petition for legal separation to seek marital dissolution; (2) an order imposing monetary sanctions against him pursuant to section 2107, subdivision (c) (section 2107(c)) for failing to serve a timely and compliant preliminary declaration of disclosure; (3) an order imposing monetary sanctions against him pursuant to Code of Civil Procedure sections 2023.030 and 2031.310, subdivision (h) (Code of Civil Procedure section 2031.310(h)) for failing to timely serve responses to Marcie's request for production of documents that were compliant with the civil discovery statutes; and (4) a domestic violence restraining order (DVRO) against him.

In her appeal, Marcie argues the family court erred by issuing mutual DVROs and ordering her to attend an anger management class.

As to Michael's appeal, we conclude the family court abused its discretion under section 271 by imposing sanctions against Michael for

---

[1] As is customary in family law matters, we refer to the parties by first name for convenience and to avoid confusion. We intend no disrespect by doing so.

[2] Statutory references are to the Family Code unless otherwise denoted.

declining to stipulate to allow Marcie to amend her petition for legal separation to seek marital dissolution. We do not address whether those sanctions violated Michael's right of free exercise of religion under the United States Constitution. The family court did not err by imposing monetary sanctions against Michael pursuant to section 2107(c) and Code of Civil Procedure sections 2023.030 and 2031.310(h). Finally, as to Michael's appeal, we conclude none of Michael's challenges to the DVRO against him has merit.

We conclude, as to Marcie, the family court erred by not engaging in the correct analysis and not making the findings necessary to issue mutual DVROs. Substantial evidence does not support a finding that Marcie was the primary aggressor, and, therefore, the DVRO against Marcie, which included an order requiring her to participate in an anger management program, must be reversed.

**FACTS AND PROCEDURAL HISTORY**

We limit our recitation of the facts and procedural history to what is necessary to resolve the issues presented by these appeals. The facts and procedural history are organized topically rather than chronologically.

**I.**

**Family Information**

Michael and Marcie were wed on September 26, 1999. They have three children by their marriage: Luke (born in September 2006), Sienna (born in October 2008), and Annajolie (born in August 2016). Michael and Marcie are practicing members of the Jehovah's Witness faith.

Michael, Marcie, and their children lived at the family home in Yorba Linda (the Yorba Linda residence) until September 2022, when Marcie

3

and the children moved out and took residence in rental properties. Michael and Marcie also owned a rental home in Laguna Beach (the Laguna Beach residence).

## II.
### Michael's Petition for Custody and Mutual Requests for a DVRO

On February 7, 2023, Michael filed a petition for custody and support of the children (Michael's custody petition). He also brought an ex parte request for order granting him sole legal and physical custody of the children, supervised visitation for Marcie, child abduction prevention orders, and orders regarding the control of property. The family court denied ex parte relief and set the matter for a hearing in March 2023.

On February 9, 2023, Marcie filed a request for a temporary DVRO against Michael. Marcie also requested (1) an emergency Child Custody Investigation, (2) the disabling of a tracking device that Michael had placed on her vehicle, (3) restoration of Marcie's access to personal and business accounts that Michael had closed, blocked or placed in his name, and (4) access to the family residence so Marcie could retrieve the children's and her personal belongings. The family court denied Marcie's request for a temporary DVRO and set the matter for a hearing on the same date as the hearing on Michael's custody petition.

On June 8, 2023, Michael filed an ex parte request for a DVRO to protect himself from Marcie and requested exclusive use of the Yorba Linda residence and the Laguna Beach residence. On the same date, the family court issued a temporary restraining order requiring Marcie to stay at least 100 yards away from Michael, his home, workplace, and vehicle, except to

4

exchange the children. The court awarded Michael exclusive use of the Yorba Linda residence and left for future determination the issue of the use of the Laguna Beach residence.

## III.
### Order Imposing Sanctions Against Michael for Refusing to Stipulate to Allow Marcie to Amend Her Petition for Legal Separation

On February 14, 2023, Marcie filed a petition for legal separation based on irreconcilable differences. She sought joint legal custody and sole physical custody of the children with visitation to Michael.

On May 2, 2023, Michael filed a response to Marcie's petition for legal separation. He denied there were irreconcilable differences and stated: "Respondent does not consent to a judgment decreeing the legal separation of the parties pursuant to Family Code section 2345 and requests dismissal of the Petition for Legal Separation of Marriage. Respondent conscientiously objects and cannot consent to a legal separation due to his Bible-based religious beliefs as one of Jehovah's Witnesses."

On May 25, 2023, Michael filed a motion to dismiss Marcie's petition for legal separation on the ground legal separation could only be granted upon the consent of both parties, and he would not consent to legal separation. He again asserted he could not consent to legal separation "due to my Bible-based religious beliefs as one of Jehovah's Witnesses."

As a consequence of Michael's refusal to stipulate, Marcie informed the court during the trial on the requests for DVRO that she intended to bring a motion for leave to amend her petition for legal separation. Marcie intended to convert the petition into a petition for dissolution of marriage. Michael's counsel told the court that Michael's

5

religious beliefs would not permit him to agree to allow Marcie to so amend her petition. Counsel asserted: "[Michael] understands that he has no legal basis to object to it. He just doesn't want to be the vehicle that drives it forward." The court agreed to hear Marcie's motion for leave to amend and Michael's motion to dismiss Marcie's petition for legal separation at the same time.

Several days later, Marcie filed a motion for leave to amend her petition for legal separation by converting it into a petition for dissolution of marriage. Marcie also requested an order imposing monetary sanctions against Michael pursuant to section 271.

In opposing Michael's motion to dismiss her petition for legal separation, Marcie stated that filing that petition "was a difficult and painful decision," but by filing his motion to dismiss, Michael forced her into making "an onerous decision" between staying in an "abusive relationship in which Michael controls her" or seeking a marital dissolution "before she is spiritually and/or emotionally ready to do so." In opposing Marcie's motion for leave to amend, Michael asserted he had "the lawful right to conscientiously object to signing" the stipulation to allow Marcie leave to convert her petition for legal separation into a petition for dissolution. That right, he argued, was "safeguarded by the United States Constitution" and "[t]herefore, any attempt to impose sanctions or penalties upon me for my conscientious decision to refrain from signing a document would constitute an infringement upon my Constitutional rights."

On September 15, 2023, following a hearing, the family court denied Michael's motion to dismiss Marcie's petition for legal separation and granted Marcie's motion for leave to amend. The court also granted Marcie's request for monetary sanctions under section 271. The court commented that

leave to amend to convert a petition for separation into a petition for divorce "is pretty straightforward and pretty liberally granted." The court found that Michael "was not cooperative," "[i]t was unreasonable for [Michael] to refuse to sign [Marcie]'s stipulation to convert the action to dissolution of marriage," and "[Michael's conduct was unreasonable as there were multiple opportunities to keep these issues out of court." The court imposed $15,000 as "attorney's fees" and $20,000 as "sanctions" against Michael for a total of $35,000.

## IV.
### Orders Imposing Sanctions Against Michael Under Section 2107(c) and Code of Civil Procedure Sections 2023.030 and 2031.310(h)

In July 2023, Marcie served a demand on Michael to serve his preliminary declaration of disclosure required by section 2104. As of two weeks later, Michael had not served a preliminary declaration of disclosure. In August 2023, Marcie filed a motion to compel Michael to serve his preliminary declaration of disclosure. Marcie requested $6,000 in attorney's fees and $10,000 in sanctions pursuant to section 2107(c).

Michael served his preliminary declaration of disclosure on October 19, 2023. Four days later, on October 23, 2023, the family court granted Marcie's motion and, as requested, ordered Michael to pay $6,000 in attorney's fees and $10,000 in sanctions pursuant to section 2107(c).

In May 2023, Marcie served Michael with her first set of requests for production of documents. In June 2023, Michael served his responses to those requests for production.

In August 2023, Marcie filed a motion to compel Michael to provide further response to her first set of requests for production of

7

documents (Marcie's motion to compel further response). She contended Michael had produced only limited personal records, failed to produce business records, and served responses that were unverified and not compliant with the requirements of the civil discovery statutes. Marcie sought monetary sanctions in the amount of $20,000 pursuant to Code of Civil Procedure section 2031.310(h).

In opposition to Marcie's motion to compel further response, Michael contended he had "made a good-faith effort to respond to [Marcie's] discovery requests and provide her with the relevant records" and "already produced a significant volume of documents." He opposed Marcie's request for sanctions on the ground, among others, that "imposing sanctions upon me would create a financial hardship for me."

The family court granted Marcie's motion to compel further response and awarded Marcie $20,000 in sanctions pursuant to Code of Civil Procedure sections 2023.030, subdivisions (d) and (e), and 2031.310(h). In written findings, the court found, "[t]here is no substantial justification to make imposition of sanctions unjust, especially for the outstanding documents that are not code-compliant and not verified responses."

## V.

### Order Issuing Mutual DVROs

The court held an evidentiary hearing on both Marcie's request for a DVRO and Michael's request for a DVRO. The hearing commenced on June 14, 2023 and continued over 15 days, ending on October 26, 2023. The parties stipulated that the same testimony could be used for both DVRO requests. Our review of the evidence is organized by topic and is focused on

8

facts and evidence relevant to the grounds on which the family court issued the mutual DVROs.

A. *Marcie's Request for a DVRO*

1. Accessing Marcie's Snapchat, iCloud, and Google accounts

Marcie retained an expert, Quincy Bahler, to conduct an investigation into whether Marcie's electronic devices and online accounts had been accessed without her consent. Bahler reviewed data from Marcie's Snapchat, iCloud, and Google accounts for the period of time from May 1, 2022 through September 12, 2022.

Bahler discovered 23 logins to Marcie's Snapchat account had been made since May 1, 2022 from an 11-inch iPad Pro, a device which Michael used regularly. Bahler also discovered a data download from Marcie's Snapchat account had been made on August 5, 2022 and the downloaded data had been delivered to mntsurf@yahoo.com, which is an e-mail address used by Michael. As a consequence, Michael would have had access to any messages and photographs from Marcie's Snapchat account from at least 12 months before August 5, 2022.

2. Tracking Marcie's Vehicle

After Marcie moved out of the Yorba Linda residence, she drove a Mercedes-Benz vehicle which had a Mercedes Me application attached to it. The Mercedes Me application, once enabled, would allow the holder of the application to locate the whereabouts of the Mercedes-Benz. Michael activated the Mercedes Me application once Marcie moved out of the Yorba Linda residence. Michael used the application, which was on his cellular phone, possibly more than 20 times to locate the Mercedes-Benz.

When Michael testified in August 2023, he had not deactivated the Mercedes Me application.

3. Appearing Uninvited at Marcie's Home

From September 22, 2022 until September 20, 2023, Marcie asked Michael 15 or 20 times not to come uninvited to her home. During that time period, Michael appeared at Marcie's home uninvited 20 to 30 times. On at least one occasion he refused to leave after Marcie had asked him to do so.

4. Exercising Control Over Marcie

As Jehovah's Witnesses, Michael and Marcie followed the concept of "headship" in marriage. Headship is an arrangement by which God is the ultimate head, Jesus, is subject to God, a husband is subject to Jesus, and a wife is subject to her husband. The husband's role is to be the head of the family and to make the final decisions on the family's behalf.

Both Michael and Marcie believed the other was not correctly practicing the concept of headship. In February 2022, Marcie sent Michael a text message stating he had "a view of women and headship that is not in line with what Jehovah intended" and he did not trust her to make decisions or plans with her friends. Michael responded, "You have an obvious problem with the headship arrangement. So does the world. So does Satan."

Michael tracked the books Marcie was reading and expressed his disapproval of them. In August 2022, Michael sent Marcie the text message "Garbage you've been filling your mind with!" in response to seeing an iBook on Marcie's iPad library about domestic abuse. Marcie responded by telling him he should "calm down and communicate instead of sneaking around like a stalker." Michael sent Marcie a screenshot of books from Marcie's iPad library with the message, "you sure do like reading about sex; yet, you won't have it with your own husband."

Michael told Marcie that the books she was reading were "disgusting," and "he would be telling the elders on [her]." Michael appeared to be particularly offended by an audiobook about domestic abuse.

On August 6, 2022 (the day after Michael downloaded data from Marcie's Snapchat account), Michael sent Marcie a text message asking her: "Why did you change your Snapchat password. You're the one reading the garbage." Marcie responded by asking Michael, "Why did you hack my account like a creepy stalker?" Michael answered, "It's my new job to know everything that's going on under this roof . . . [I]t's time for you to start coming clean." Later that day, Michael sent Marcie a text message stating: "I[']m in shock you have no problem with these books. I have been talking to brothers."

In September and October 2022, and January 2023, Michael left handwritten letters at Marcie's residence to the children. In these letters, Michael expressed remorse for his "controlling" and "hurtful" behavior, the "dominating way" he controlled the family, and his lack of consideration for Marcie's input into decision making.

B. *Michael's Request for a DVRO*

1. Entering the Yorba Linda Residence

On June 2, 2023, Marcie entered the Yorba Linda residence while Michael was not at home. Marcie was aware that Michael did not want her to enter the residence. Michael had offered to collect Marcie's personal items from the residence and deliver them to Marcie.

Marcie gained entry to the residence through the front door, which was unlocked. She took a jug of water, her purse, prescription medication, some towels, Sienna's purse and bathing suit, proof of automobile insurance cards, a printout of text messages between Luke and a friend, and

11

$1,200 in cash. Michael testified that Marcie also took some notepad papers and documents relating to the marital case and a small fire-safe box containing money, valuables, $30,000 in cash, and a few gold coins.

### 2. Finding and Looking into Michael's Tesla

After leaving the Yorba Linda residence on June 2, Marcie drove to the gym that Michael frequented. Marcie had learned that Michael had bought a new Tesla and she walked through the gym parking lot in order to find it. She found a Tesla with paper license plates, indicating it was new, peered through the window, and spotted a child's shirt and hairbrush that could have been Sienna's or Annajolie's. She saw a large monitor indicating she was being video recorded.

When Michael saw the video recording of Marcie walking around and looking into the Tesla, he spoke with his attorney about getting a restraining order.

On June 3, 2023, Luke was admitted to the hospital for a football injury. Michael and Marcie visited Luke at different times. Michael left the hospital before Marcie, and Marcie drove Luke home. On the drive home, Marcie saw Michael's car and followed it. Michael sent Marcie a text message asking her why she was following him.

### 3. Appearing at the Beach at the Laguna Beach Residence

On May 17, 2023, Michael notified Marcie that he would be moving from the Yorba Linda residence to the Laguna Beach residence and told her to stay away from both homes. Michael moved into the Laguna Beach residence in June 2023.

On about July 19, 2023, Michael took photographs of Marcie's car parked about 300 feet from the Laguna Beach residence. The June 8

12

temporary DVRO required Marcie to stay at least 100 yards away from Michael and his home.

On July 24, 2023, Michael saw Marcie with her friend, Leanne Doore, and a group of teenagers on the private beach connected to the gated community in which the Laguna Beach residence was located. The beach was 100 yards from the Laguna Beach residence "as the crow flies" and 250 to 275 yards as a person would actually travel. Doore had arranged the gathering—a barbeque—for 10 or 15 of her children's friends. They had gained access to the beach from Marcie's brother, who lived in the gated community.

As Michael approached the gathering, Marcie ran down the beach past Michael and up some stairs. Michael walked up to Doore and told her that Marcie was not allowed to be there.

Michael testified seeing Marcie on the beach made him feel anxious and uncomfortable. Doore testified, however, that Michael had a smile on his face and did not say anything about being fearful. Michael stayed and chatted with Doore, also a long-time friend of Michael, for about two hours.

C. *The Mutual DVROs*

At the conclusion of testimony on October 23, 2023, the family court issued mutual DVROs of five years in duration against both Michael and Marcie. The court found that Michael's actions giving rise to the DVRO protecting Marcie were: (1) "[Michael]'s historic tracking, surveillance and monitoring of [Marcie]'s electronic devices and accounts"; (2) "[Michael]'s monitoring of [Marcie]'s whereabouts via use of vehicle tracking app."; and (3) "[Michael]'s inappropriate use of religion to control [Marcie], including, but not limited to, in the instant marital dissolution action."

13

In addition, the court found that Michael had engaged in "coercive control" of Marcie in these ways: (1) Michael monitored Marcie's whereabouts and "he had the Mercedes Me app and utilized it to monitor [Marcie]'s movements"; (2) Michael accessed Marcie's iCloud account, looked "at the books she was reading," and accessed "her browsing history, text messaging and message history; maintained on [Marcie]'s electronic devices"; (3) "[Michael] kept showing up uninvited at [Marcie]'s home after the parties[ ] separated because he wanted to see the kids and reconcile. [Marcie] asked him to leave on multiple occasions"; (4) "[Michael] inappropriately used his religion, compelling [Marcie]'s filing of a dissolution action because [Michael] wanted to control whether or not [Marcie] could seek a legal separation and, later, a dissolution of marriage"; and (5) "[Michael] sought to control the type of books or literature [Marcie] was reading."

The court found that Marcie's actions giving rise to the DVRO protecting Michael were: (1) "[Marcie]'s June 2, 2023, uninvited entry into the former family residence"; (2) "[Marcie]'s June 2, 2023, trip to [Michael]'s gym parking lot, where she located a new Tesla vehicle and photographed it"; and (3) "[Marcie]'s visit [on July 24, 2023] to the beach near Three Arch Bay, which was near the house in which [Michael], was living at the time." The family court found that Marcie had entered the Yorba Linda residence and taken items from it despite Michael's requests that she not come to the residence and his representation that he would have a pod packed with her clothing and personal items delivered to her. The court found that Marcie drove her father's vehicle to the Yorba Linda residence on June 2, 2023 in an effort to be inconspicuous.

14

The family court found that neither Michael nor Marcie was credible "at this point in time" and that neither Michael nor Marcie had acted in self-defense.

## DISCUSSION

### I.

### The Family Court Erred Under Section 271 by Sanctioning Michael for Refusing to Stipulate to Allow Marcie to Amend Her Legal Separation Petition

A. *Sanctions Under Section 271 and Standard of Review*

The family court imposed sanctions against Michael under Family Code section 271 on the ground he unreasonably refused to sign the stipulation to permit Marcie to amend her petition for legal separation to convert it into one for marital dissolution.[3]

Section 271 authorizes the court to impose "attorney's fees and costs" against a party who engages in "conduct . . . [that] frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys." (§ 271, subd. (a); see *In re Marriage of Tharp* (2010) 188 Cal.App.4th 1295, 1316.) An award of attorney's fees and costs under section 271 is deemed to be "in the nature of a sanction." (§ 271, subd. (a).) A

---

[3] Marcie asserts that sanctions were not based solely on Michael's refusal to stipulate to her amending her petition but were "based on his generally uncooperative actions." The record does not support that assertion. In the order granting sanctions, the family court specifically identified only one act by Michael that warranted sanctions: "It was unreasonable for [Michael] to refuse to sign [Marcie]'s stipulation to convert the action to dissolution of marriage."

15

party requesting an award of attorney's fees and costs under section 271 is not required to demonstrate any financial need for the award. (*Ibid.*)

We review an award of attorney's fees and costs under section 271 under the abuse of discretion standard. (*Featherstone v. Martinez* (2022) 86 Cal.App.5th 775, 783.) "To the extent that we are called upon to review the trial court's factual findings, we apply a substantial evidence standard of review." (*Loeffler v. Medina* (2009) 174 Cal.App.4th 1495, 1505.)

B. *The Family Court Erred Under Section 271 by Imposing Sanctions Against Michael*

Michael contends that imposition of sanctions against him under section 271 violated his rights under the free exercise clause of the First Amendment to the United States Constitution. He claims that as a practicing and devout member of the Jehovah's Witness faith, he could not stipulate to allowing Marcie to amend her petition for legal separation to allege dissolution instead without violating his religious beliefs.

We need not address whether the sanctions against Michael under section 271 violated his constitutional right of free exercise of religion. The trial court abused its discretion under section 271 by imposing monetary sanctions against Michael for not stipulating to permit Marcie to amend her petition for legal separation by converting it into one for marital dissolution. Stipulating by its nature is not obligatory. Michael expressed what he believed to be a "conscientious" reason for declining to stipulate: Due to his religious beliefs, he was not comfortable with "facilitating" a divorce. Whether or not that reason amounts to a legitimate claim under the federal constitution's free exercise of religion clause is a question we need not decide. Michael's concern was reasonable and, it appears to us, held in good faith. No evidence was presented that would lead us to conclude to the contrary.

16

Further, Marcie could have avoided the cost of bringing a motion for leave to amend by filing a petition for marital dissolution and, after ensuring her request for a DVRO was preserved under its original docket number, either dismissing her petition for legal separation or requesting the family court to consolidate the two petitions.

We futher note that the overall monetary award of $35,000 was excessive. The family court ordered Michael to pay (1) "$15,000 as and for *attorney's fees*" and (2) "$20,000 as and for *sanctions*." (Italics added.) The court also found: (1) "Based on [Michael]'s lack of cooperation, sanctions in the sum of $20,000 is reasonable," and (2) "[Marcie]'s attorney's fees incurred for having to bring her motion to amend the petition are reasonable in light of the circumstances."

Section 271 mandates that sanctions be "tethered" to attorney's fees and costs; that is, sanctions are limited to attorney's fees and costs incurred by the party seeking sanctions. (*In re Marriage of Erndt & Terhorst* (2021) 59 Cal.App.5th 898, 904.) Sanctions under section 271 may not be imposed as punishment. (*In re Marriage of Erndt & Terhorst*, at p. 904.) The $20,000 imposed as "sanctions" was not compensation for attorney's fees and costs and was therefore improper.

## II.
## The Family Court Did Not Err By Imposing Sanctions Against Michael Pursuant to Section 2107(c) and Code of Civil Procedure Sections 2023.030 and 2031.310(h)

A. *Summary*

Michael contends the family court erred by (1) sanctioning him $16,000 under section 2107(c) for failing to timely serve a preliminary declaration of disclosure that was compliant with Family Code section 2104

17

and (2) sanctioning him $20,000 under Code of Civil Procedure sections 2023.030 and 2031.310(h) for not serving discovery responses that were compliant with the civil discovery statutes and not producing documents responsive to Marcie's request for production of documents.

Michael argues the sanctions under section 2107(c) are invalid as a matter of law because Marcie was not in compliance with the disclosure requirements of section 2104. He also argues with respect to both sanctions awards that his inability to afford counsel constituted substantial justification for his actions or a circumstance making the imposition of sanctions unjust.

At the outset, we address Michael's argument that "[t]o the extent the trial court awarded both sanctions due to Michael's religious objections, the RFRA exempts Michael from sanctions." This argument is based on a comment made by the family court at the hearing on the discovery motions expressing a concern that Michael had previously objected to discovery requests on the ground he did not have to produce documents because he had objected to the legal separation proceeding. Michael's responsive declaration in opposition to Marcie's motion to compel further response did not make a claim that he did not have to produce documents. We do not interpret the court's comments and findings as showing the court imposed the sanctions against Michael under section 2107(c) and Code of Civil Procedure section 2031.310(h) based on his religious beliefs. The court properly imposed sanctions against Michael based on the statutory criteria and not his religious beliefs.

B. *Sanctions Under the Family Code Disclosure Statutes*

Family Code section 2104 requires each party to serve on the other party a preliminary declaration of disclosure setting forth information

18

regarding that party's assets and liabilities. (§ 2104, subds. (a), (c).) The petitioner must file the preliminary declaration of disclosure either concurrently with or within 60 days of the filing of the petition for dissolution or legal separation. (*Id.*, subd. (f).) The respondent must serve the preliminary declaration of disclosure either concurrently with or within 60 days of filing the response. (*Ibid.*) The parties may not file the preliminary declaration of disclosure but must file the proof of service. (*Id.*, subd. (b).)

Section 2107, subdivision (a) (section 2107(a)) provides: "If one party fails to serve on the other party a preliminary declaration of disclosure under Section 2104, . . . or fails to provide the information required in the respective declarations with sufficient particularity, and if the other party has served the respective declaration of disclosure on the noncomplying party, the complying party may, within a reasonable time, request preparation of the appropriate declaration of disclosure or further particularity."

If the noncomplying party fails to comply with the request under section 2107(a), then the complying party has three possible remedies, including to "[f]ile a motion to compel a further response." (*Id.*, subd. (b).) The family court must impose monetary sanctions against the noncomplying party "unless the court finds that the noncomplying party acted with substantial justification or that other circumstances make the imposition of the sanction unjust." (§ 2107(c).) Sanctions must be "in an amount sufficient to deter repetition of the conduct or comparable conduct, and shall include reasonable attorney's fees, costs incurred, or both." (*Ibid.*)

Michael argues the sanctions under section 2107(c) are invalid as a matter of law because Marcie was not in compliance with the disclosure requirements of section 2104 in these ways: (1) She did not serve her

19

preliminary declaration of disclosure within 60 days of filing her petition for legal separation and (2) she did not file the proof of service with the court.

Marcie filed her petition for legal separation on February 14, 2023. She served her preliminary declaration of disclosure over sixty days later, on July 5, 2023. In August 2023, after serving her preliminary declaration of disclosure, Marcie filed her motion to compel Michael to serve his preliminary declaration of disclosure.

The notion that a party who is not in compliance with section 2104 may not recover sanctions under section 2107(c) is the product of judicial interpretation. *In re Marriage of Fong* (2011) 193 Cal.App.4th 278, 288 (*Fong*), interpreted the term "complying party" in section 2107 to mean "a party [who] has served a preliminary or final declaration of disclosure" and, therefore, only a party who has served a preliminary declaration of disclosure may bring a motion to compel the other party to do so. "Accordingly, construing section 2107, subdivision (c) in the context of the statute as a whole, we conclude that only a 'complying party,' meaning a party [who] has served a preliminary or final declaration of disclosure, is entitled to seek an award of monetary sanctions against the other party for failure to comply with the applicable disclosure requirements." (*Id.* at p. 289.)

We do not read section 2107 or *Fong* as saying the party seeking sanctions must have *timely* served a preliminary declaration of disclosure, so long as the disclosure statement was served before bringing the motion to compel. The *Fong* court explained that "[r]equiring a party to serve a preliminary or final declaration of disclosure before seeking a remedy under section 2107, including monetary sanctions, serves the statutory purpose of ensuring that both parties make full and accurate disclosures." (*Fong, supra,* 193 Cal.App.4th at p. 289.) Marcie served her preliminary declaration of

20

disclosure before she made her demand on Michael and brought her motion to compel. She thereby ensured she had made a full and accurate disclosure before seeking sanctions against Michael, and made her disclosure without forcing Michael to incur the cost of a motion to compel.

Marcie's failure to file her preliminary declaration of disclosure with the court did not preclude her from seeking sanctions against Michael under section 2107(c). The compliance referred to in section 2107(a) is *service* on the other party of the preliminary or final declaration of disclosure or provision of information required in those declarations with the sufficient particularity. Section 2107(a) does not mention *filing* the declaration of disclosure. The statutory purpose of "ensuring that both parties make full and accurate disclosures" is served so long as the party seeking a remedy under section 2107 has "serve[d] a preliminary or final declaration of disclosure." (*Fong, supra*, 193 Cal.App.4th at p. 289.)

C. *Michael Did Not Act with Substantial Justification*

Code of Civil Procedure section 2031.310(h) provides, "the court shall impose a monetary sanction under Chapter 7 (commencing with Section 2023.010) against any party, person, or attorney who unsuccessfully makes or opposes a motion to compel further response to a demand, unless it finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust." Section 2107(c) likewise requires the family court to impose monetary sanctions against the noncomplying party "unless the court finds that the noncomplying party acted with substantial justification or that other circumstances make the imposition of the sanction unjust." (§ 2107(c).)

Michael argues the tardy service of and deficiencies in his preliminary declaration of disclosure and discovery responses were due to his

21

self-representation, which was caused by an inability to afford counsel. His inability to afford counsel, he claims, thus constituted "substantial justification" or "other circumstances" that made the imposition of sanctions against him unjust under section 2107(c) and Code of Civil Procedure section 2031.310(h).

The record undermines Michael's claim that the tardiness in serving and deficiencies in his preliminary declaration of disclosure and discovery responses were due entirely to his self-representation. Michael was represented by counsel when he filed his custody petition in February 2023 and, as of September 28, 2023, remained represented by the same counsel. Michael was represented by counsel in May 2023 when Marcie served her request for production of documents, and his counsel prepared the responses to those requests. Michael was represented by counsel in July 2023 when Marcie served her demand that he serve his preliminary declaration of disclosure. Michael was represented by counsel in August 2023 when Marcie filed her motion to compel Michael to serve his preliminary declaration of disclosure and motion to compel further discovery responses. Michael's counsel prepared and filed opposition to both of those motions.

Michael was self-represented at the hearing on October 23, 2023. During the hearing, he reviewed text messages from his former counsel, who claimed that Michael's discovery responses (which counsel had prepared) complied with the discovery statutes. The family court concluded otherwise.

The authority cited by Michael does not support the proposition that inability to afford counsel is substantial justification or other circumstances that would spare him from sanctions under section 2107(c) or Code of Civil Procedure section 2031.310(h). He quotes the first part of section 2030, subdivision (a)(1), which states that in a family law proceeding,

22

"the court shall ensure that each party has access to legal representation." But he omits the next part, which explains that the means by which the court is to ensure such access is "by ordering, . . . one party. . . to pay to the other party, . . . whatever amount is reasonably necessary for attorney's fees and for the cost of maintaining or defending the proceeding during the pendency of the proceeding." The family court's obligations under section 2030, subdivision (a)(1) do not arise automatically; rather, the obligation to ensure access to legal representation is triggered by a request for attorney's fees. (*In re Marriage of Knox* (2022) 83 Cal.App.5th 15, 28–29.) No request for attorney's fees from Michael appears in the appellate record.[4]

Michael's contention that ability to afford counsel constitutes substantial justification or other circumstances under section 2107(c) and Code of Civil Procedure section 2031.310(h) conflicts with the rule that self-represented litigants are held to the same standards as attorneys. (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984–985 ["requiring or permitting exceptional treatment of parties who represent themselves would lead to a quagmire in the trial courts, and would be unfair to the other parties to

_____

[4] Under section 270, "[i]f a court orders a party to pay attorney's fees or costs under this code, the court shall first determine that the party has or is reasonably likely to have the ability to pay." In his briefing, Michael cites section 270 once and only to argue that statute, together with section 2107(c) and Code of Civil Procedure section 2031.310(h), "indicate[s] that courts should give great weight to a party's ability . . . to pay their own attorney [fees] or the ability to pay the other party's." Although Michael hints at making a claim directly under section 270, he never argues the family court erred by imposing sanctions against him without first making a determination under section 270 that he had the ability to pay. Any such argument is therefore forfeited. (*Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 701, fn. 15; *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.)

litigation"]); *Kobayashi v. Superior Court* (2009) 175 Cal.App.4th 536, 543.) If Michael was indigent, either he or his counsel could have pursued the remedy provided by the Family Code by requesting an order requiring Marcie to pay him an amount reasonably necessary for attorney's fees to defend the proceeding. (§ 2030, subd. (a)(1).)

## III.
## The Family Court Erred by Issuing Mutual DVROs

A. *Background Law and Standard of Review*

The Domestic Violence Prevention Act (DVPA) authorizes a court to issue a restraining order against any person for the purpose of preventing a recurrence of acts of domestic violence, abuse, or sexual abuse. (§ 6300; see *In re Marriage of Davila & Mejia* (2018) 29 Cal.App.5th 220, 225.) The DVRA defines "abuse" as including "to place a person in reasonable apprehension of imminent serious bodily injury to that person or to another" and "to engage in any behavior that has been or could be enjoined pursuant to Section 6320." (§ 6203, subd. (a)(3), (4).) Section 6320, subdivision (a) grants the court authority to enjoin a party from "molesting, attacking, striking, stalking, threatening, . . . harassing, telephoning, . . . contacting, either directly or indirectly, by mail or otherwise, coming within a specified distance of, or disturbing the peace of the other party." Section 6320, subdivision (c) in turn defines the term "disturbing the peace" to include "coercive control, which is a pattern of behavior that in purpose or effect unreasonably interferes with a person's free will and personal liberty."

We review orders granting or denying a DVRO under the abuse of discretion standard. (*In re Marriage of Willis & Costa-Willis* (2023)

24

93 Cal.App.5th 595, 601.) We review the court's factual findings under the substantial evidence standard. (*Davila & Mejia, supra*, 29 Cal.App.5th at p. 226.) Whether the family court applied the correct legal standard in exercising its discretion is a question of law which we review de novo. (*In re A.P.* (2024) 103 Cal.App.5th 1137, 1143.)

B.  *The Family Court Did Not Err by Issuing a DVRO Against Michael*

Michael argues the family court erred by issuing a DVRO against him for three reasons: (1) the DVRO is in error to the extent the family court based its decision on Michael's religious beliefs, (2) the evidence that Marcie tracked and followed him established that she was not afraid of or harassed by him, (3) the conduct upon which the DVRO was based took place during Michael and Marcie's marriage and was resolved upon their separation.

Among the actions which the family court cited as giving rise to a restraining order was Michael's "inappropriate use of religion to control [Marcie], *including, but not limited to*, in the instant marital dissolution action." (Italics added.) The only such instance of inappropriate use of religion expressly identified by the family court was "compelling [Marcie]'s filing of a dissolution action because [Michael] wanted to control whether or not [Marcie] could seek a legal separation and, later, a dissolution of marriage." We need not decide whether the court infringed Michael's right of free exercise in order to conclude this was an erroneous ground for a restraining order. Michael had a statutory right not to agree to a legal separation if he did not want one. The other grounds cited by the trial court are, however, sufficient in themselves to support the DVRO against Michael.

The family court did not infringe Michael's right of free exercise to the extent the DVRO was based on Michael's acts of coercive control over Marcie, such as tracking her whereabouts, accessing her electronic devices

25

and online accounts, monitoring her reading material, restricting her movement, and appearing uninvited at her home. While Michael might have believed his conduct or some of it was a valid exercise of his belief in the concept of headship, Marcie did not share that belief, and he was not free to impose his religious beliefs on her.

Michael argues that Marcie's conduct in entering the Yorba Linda residence, finding Michael's Tesla in the gym parking lot, and attending the beach barbeque near the Laguna Beach residence showed that Michael was not harassing Marcie or that she was not afraid of him. We disagree. In the first two instances, Michael was not around when Marcie was in the home or the gym parking lot. When Michael appeared at the beach barbeque, Marcie fled. Moreover, Michael cites no authority for the proposition that the DVRA requires the enjoined party to have placed the protected party in fear in order for a DVRO to issue: Harassment, annoyance, and coercive control can be sufficient. (§§ 6203, subd. (a)(3), (4), 6320, subds. (a), (c).)

The need for a DVRO does not disappear when the parties separate. Section 6301, subdivision (c) expressly provides, in relevant part: "The right to petition for relief shall not be denied because the petitioner has vacated the household to avoid abuse." In *In re Marriage of F.M. & M.M.* (2021) 65 Cal.App.5th 106, the Court of Appeal concluded the family court erred by denying a DVRO in reliance on the fact the parties had separated. (*Id.* at pp. 119–120.) "The trial court's use of residential separation as a substitute for a DVRO was inappropriate given that the parties still have to coparent." (*Id.* at p. 120; see *Rodriguez v. Menjivar* (2015) 243 Cal.App.4th 816, 823 ["No showing of the probability of future abuse is required to issue a DVPA restraining order"].)

26

Further, the nature of Michael's conduct demonstrates that separation did not moot the need for a DVRO. After Marcie moved out of the Yorba Linda residence, Michael appeared uninvited at her home 20 to 30 times. Michael activated the Mercedes Me application after Marcie moved out of the Yorba Linda residence. When Michael testified in August 2023, he had not deactivated the Mercedes Me application. Although Michael claimed he had not deactivated the application to ensure Marcie was not stalking him, the family court expressly found Michael's testimony on that point to be not credible.

## C. *The Family Court Erred by Finding Marcie Was a Primary Aggressor*

### 1. Background Law

Marcie challenges the mutual DVROs on the ground the family court found both Marcie and Michael to be primary aggressors without engaging in the analysis and making the findings required by section 6305. We agree and conclude the family court erred by issuing mutual restraining orders.

Section 6305 states that a court "shall not issue a mutual order enjoining the parties from specific acts of abuse described in Section 6320 unless both of the following apply: [¶] (1) Both parties appear and each party presents written evidence of abuse or domestic violence . . . . [¶] (2) The court makes detailed findings of fact indicating that both parties acted as a primary aggressor and that neither party acted primarily in self-defense." (§ 6305, subd. (a).)

"Family Code section 6305 permits trial courts to issue mutual restraining orders, but limits them to specific circumstances . . . . Indeed, the language of the statute makes clear that mutual restraining orders are the exception, and 'shall not issue' unless the trial court makes specific findings."

27

(*K.L. v. R.H.* (2021) 70 Cal.App.5th 965, 979 (*K.L.*).) If a court issues a mutual restraining order without making the requisite findings under section 6305, the order is voidable. (*Melissa G. v. Raymond M.* (2018) 27 Cal.App.5th 360, 372 (*Melissa G.*).) In addition, "the requirement to make detailed findings in section 6305 applies regardless of whether the orders arise from separate incidents." (*Ibid.*)

In determining whether both parties acted as a primary aggressor, the court must consider the provisions regarding "dominant aggressors" found in Penal Code section 836, subdivision (c)(3). (§ 6305, subd. (b).) Penal Code section 836 defines "dominant aggressor" as "the person determined to be the most significant, rather than the first, aggressor." (Pen. Code, § 836, subd. (c)(3).) Under Penal Code section 836, subdivision (c)(3), the court must consider "(A) the intent of the law to protect victims of domestic violence from continuing abuse, (B) the threats creating fear of physical injury, (C) the history of domestic violence between the persons involved, and (D) whether either person involved acted in self-defense."

In making the primary aggressor determination, section 6305 "requires that the acts of the parties be weighed against each other." (*K.L., supra*, 70 Cal.App.5th at p. 979.) "As a result, in deciding whether mutual restraining orders should issue, the trial court must consider the parties' respective alleged acts of domestic violence in concert, and not separately . . . ." (*Ibid.*)

### 2. The Family Court Did Not Engage in the Required Analysis and Make the Findings Necessary to Issue Mutual DVROs

The family court did not consider Michael's and Marcie's respective acts of domestic violence in concert or weigh them against the other. Although the family court made findings pursuant to section 6305, the

28

court did precisely the opposite of what the statute requires: The court found Michael to be the primary aggressor as to Marcie's motion for a DVRO and Marcie to be the primary aggressor as to Michael's motion for a DVRO. "By separating out for analysis each party's claim of abuse against the other, and issuing restraining orders against both parties as if incidents occurring at different times must be wholly unrelated, a court does not give full effect to the statutory directive that it 'shall consider' both 'the history of domestic violence between the persons involved' and 'protect[ing] victims of domestic violence from continuing abuse.'" (*Melissa G., supra*, 27 Cal.App.5th at p. 372.)

The family court found that neither Marcie nor Michael acted in self-defense. However, the record gives no indication the family court considered the other mandatory factors of Penal Code section 836, subdivision (c)(3), in particular, "'the intent of the law to protect victims of domestic violence from continuing abuse'" and "'the history of domestic violence between the persons involved.'" (See *K.L., supra*, 70 Cal.App.5th at p. 978.)

Because the family court did not undertake the required analysis and make the necessary findings under section 6305, we consider whether the evidence would support a mutual restraining order. (*Melissa G., supra*, 27 Cal.App.5th at p. 373.) More specifically, we examine whether substantial evidence would support the finding that Marcie was a primary aggressor. (*K.L., supra*, 70 Cal.App.5th at pp. 982-983 [mutual DVRO reversed because family court erred in finding both parties to be primary aggressors]; *J.J. v. M.F.* (2014) 223 Cal.App.4th 968, 975 [substantial evidence did not support the finding that one party to a mutual restraining order acted primarily as an

29

aggressor]; see § 6305, subd. (a) [mutual DVRO is justified only if "both parties acted as a primary aggressor"].)

### 3. The Evidence Does Not Support a Finding That Marcie Was a Primary Aggressor

Marcie argues her allegations of harassment against Michael were "significant" while his allegations of harassment against her were "minimal." While we do not agree with Marcie's description of the allegations against her as being minimal, we do conclude substantial evidence does not support a finding that she was a primary aggressor.

The DVRO against Marcie was based on three discrete and isolated acts: (1) entering the Yorba Linda residence on June 2, 2023 and taking items, (2) finding and looking into Michael's Tesla at the gym parking lot, also on June 2, 2023, and (3) appearing at the beach barbeque near the Laguna Beach residence on July 24, 2023. Michael had not yet been granted exclusive use of the Yorba Linda residence when Marcie entered it or of the Laguna Beach residence when she appeared at the beach barbeque. Marcie did not come into contact with Michael in the first two incidents, and, at the beach barbeque, she left quickly when Michael appeared.[5] Marcie was not in violation of the temporary DVRO when she appeared at the beach barbeque, and she had rightful access to the beach because her brother was a resident of the gated community. No evidence was presented that any of those acts was repeated, and all three acts occurred after Michael had engaged in the conduct leading to the DVRO against him.

---

[5] Although the family court noted that Marcie had followed Michael after leaving the hospital on June 3, 2023, the court did not include that incident as a basis for issuing the DVRO against Marcie.

In contrast, the DVRO against Michael was based on far more serious incidents creating a course of conduct spanning several months. Michael surreptitiously accessed Marcie's Snapchat, Google, and iCloud accounts. He downloaded data from the Snapchat account and thereby gained access to at least a year's-worth of Marcie's messages, photographs, and browsing history. With data obtained from Marcie's online accounts, Michael monitored the books Marcie was reading as well as her activities.[6] He told Marcie the books she was reading were "disgusting," and "he would be telling the elders on [her]." Michael appeared to be particularly offended by an audiobook about domestic abuse. When Michael asked Marcie why she changed her Snapchat account password, Marcie replied, "Why did you hack my account like a creepy stalker?" Michael responded: "It's my new job to know everything that's going on under this roof."

Michael did not just peer into Marcie's vehicle, as Marcie had done with Michael's Tesla: He activated the Mercedes Me application for that vehicle so he could track Marcie's whereabouts, and he had not deactivated the Mercedes Me application at the time he testified.

After Marcie moved out of the Yorba Linda residence and moved into her own home, she asked Michael many times not to appear uninvited at

---

[6] Testimony was presented that Michael used his understanding of the concept of headship to restrict Marcie's movements. He demanded that she be submissive and obtain his permission to leave the house, had absolute financial control of the family, and denied Marcie access to bank and credit card statements. We do not consider such evidence in whether Marcie was a primary aggressor because the only instance specified by the family court as a means by which Michael inappropriately used religion to control Marcie was to "compel[ ] [Marcie]'s filing of a dissolution action."

her home. He did so anyway—20 to 30 times between September 22, 2022 and September 20, 2023.

In September and October 2022 and in January 2023, Michael left handwritten letters for Marcie or Sienna in which he expressed remorse for his hurtful behavior, excluding Marcie from decision making, and the dominating way in which he controlled the family.

Marcie's acts of domestic violence, when weighed against and in concert with Michael's acts of domestic violence, as well as the history of domestic violence between Michael and Marcie, show that Marcie was not a primary aggressor. Because substantial evidence does not support the family court's finding that Marcie was a primary aggressor, and that finding was necessary to the issuance of mutual DVROs, the proper disposition is to reverse the DVRO against Marcie without remand to the family court. (*K.L., supra*, 70 Cal.App.5th at pp. 982-983; *J.J. v. M.F., supra*, 223 Cal.App.4th at p. 976–977.)

D. *The Requirement That Marcie Attend an Anger Management Program Is Reversed as Part of the DVRO Against Marcie*

As part of the DVRO, both Michael and Marcie were ordered to attend a 26-week anger management program. Marcie argues this order must be reversed as to her because "there was no evidence whatsoever Marcie exhibited any anger toward Michael, at any time." The order that Marcie participate in an anger management program was attendant to the DVRO against her. As we are reversing the mutual DVROs, the order that Marcie participate in an anger management program is necessarily reversed too.

## DISPOSITION

The DVRO against Marcie, including the requirement that she participate in an anger management program, is reversed. The DVRO against Michael is affirmed. The order imposing monetary sanctions against Michael pursuant to Family Code section 271 is reversed. The order imposing monetary sanctions against Michael pursuant to section 2107(c) and the order imposing monetary sanctions against him pursuant to Code of Civil Procedure sections 2023.030 and 2031.310(h) are affirmed. Marcie may recover costs on appeal.

SANCHEZ, J.

WE CONCUR:

MOTOIKE, ACTING P. J.

MOORE, J.
bre

33

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re the Marriage of MARCIE and MICHAEL HOCH.<br><br>MARCIE HOCH,<br><br>    Appellant,<br><br>        v.<br><br>MICHAEL HOCH,<br><br>    Appellant. | G063467<br><br>(Super. Ct. No. 23D001088)<br><br>ORDER GRANTING REQUEST FOR PUBLICATION; MODIFICATION OF OPINION; NO CHANGE IN JUDGMENT |

Family Violence Appellate Project has requested our opinion, filed on February 17, 2026, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c)(2), (3), (4), (6). The request is GRANTED. The opinion is ordered published in the Official Reports.

It is hereby ordered that the opinion be modified as follows:

At page 18, second full paragraph, line three, replace "RFRA" with the following:

"[Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb et seq.]"

There is no change in the judgment.


                                        SANCHEZ, J.

WE CONCUR:


MOTOIKE, ACTING P. J.


MOORE, J.